LAMOTHE, Respondent, vs. ST. LOUIS MARINE RAILWAY AND DOCK COMPANY, Appellant.

1. The acts of an agent within the scope of his usual employment are binding on the principal, as to third persons, until they have notice of a revocation of the agent's authority.

*Appeal from St. Louis Court of Common Pleas.*

*T. B. Hudson* and *T. T. Gantt*, for appellant. 1. The acts of Cutting were not binding on the company after July 15, 1850, he having on that day ceased to be its agent. 2. The custom of the company being only to take charge of boats when they were brought along side of the ways by direction of the company in order to be taken on the docks, express authority from the company was necessary, to enable an agent to bind the company by a contract different from such custom. *Schimmelpennich* v. *Bayard*, 1 Pet. R. 265. *Pickering* v. *Burk*, 15 East, 43. *Stubbing* v. *Heintz*, Peake's Rep. 47. *Pearce* v. *Rogers*, 3 Esp. 214. *Andrews* v. *Kneeland*, 6 Cow. 354. *Beals* v. *Allen*, 18 J. R. 363. *Parsons* v. *Armor*, 3 Pet. Rep. 428. *Snow* v. *Perry*, 9 Pick. 542. *Wiltshire* v. *Sims*, 1 Camp. 258. *Brown* v. *Staton*, 2 Chitt. 353.

*Knox & Kellogg*, for respondent, cited Story on Ag. §470. 12 Modern, 346. *Salte* v. *Field*, 5 T. R. 215. Strobh. 506. 2 Kent's Comm. (4 ed.) sec. 41, p. 644.

RYLAND, Judge, delivered the opinion of the court.

This action was instituted to recover of the defendant the value of a ferry boat charged to have been lost by the negli-

gence or carelessness of the defendant's agent. There was much conflicting testimony in the case. All of the evidence of the plaintiff tended to prove that Alfred Cutting, at the time the boat was brought to St. Louis for repairs, was the superintendent and foreman of the defendant, and that he was so when the contract was made by him. Cutting, as the agent of said defendant, contracted with the plaintiff for the repairs of his boat.

Defendant offered evidence tending to show that, though Alfred Cutting was agent for said defendant, and was foreman and superintendent of the docks of said defendant when the contract was made with plaintiff for the repair of his boat, he ceased to be such foreman and superintendent on Saturday, the 13th of July, being the Saturday night previous to Monday morning when said boat was brought to St. Louis. The evidence of defendant further tended to prove that said Cutting continued in the employment of said defendant, from the time said contract was entered into till some weeks after the plaintiff's boat was lost, though the actual superintendent of the dock, after July 15th, was Luther Perkins. In regard to all the material points in the case, the testimony of the plaintiff was in direct conflict with the testimony of the defendant. Two verdicts have been rendered for the plaintiff. On motion of plaintiff, the court instructed the jury as follows :

If the jury believe from the evidence, that Alfred Cutting was the authorized agent of the defendant to take control of boats brought to the place of business of the defendant to be repaired, and that, as such agent, said Cutting took charge of said ferry boat of plaintiff, and that, through the inattention or carelessness of said Cutting, said boat was lost, they will find for the plaintiff.

The fact that Cutting told plaintiff not to bring his boat to St. Louis until such time as he (Cutting) should direct, will not prejudice the plaintiff's right to recover, if the jury believe from the evidence that, when the boat was in fact brought to St. Louis, it was taken possession of by said Cutting, as

14—VOL. XVII.

agent of defendant, and was lost through the inattention, negligence or carelessness of Cutting.

On motion of the defendant, the court instructed the jury as follows :

The jury are instructed that, if they believe from the evidence that the boat of the plaintiff was not in charge of the defendant, at the time she sunk, then the defendant is not liable for her loss.

If the jury believe from the evidence, that Gilky brought the boat of plaintiff to St. Louis before he was notified to do so by Cutting ; that Cutting, on Gilky's telling him of the arrival of the boat at St. Louis, told Gilky that the docks were full, which statement was correct ; that Gilky then left the city, leaving the boat in charge of the boy of whom the witnesses have spoken, without any agreement on the part of defendant to take charge of said boat until there was a place for her on the docks, and that before there was a place for her on the docks, the boat was lost by the carelessness of Gilky and the boy left in charge of her, without any participation therein by defendant, then the plaintiff cannot recover.

The court refused the following instructions, asked by the defendant :

No liability of defendant can be made to accrue in consequence of any failure of Cutting, as an individual, and not as agent of defendant, to save the vessel of the plaintiff ; such neglect, if it occurred without any antecedent promise, cannot be the foundation of any legal liability against the defendant ; if Cutting was not the foreman or superintendent of the defendant on the 15th of July, 1850, nor especially authorized to take charge of boats generally, nor of this boat in particular, on account of defendant, then defendant is not liable for his acts.

That if the jury believe the evidence of Simmons, Cutting or Perkins, relative to the time and circumstances when the change of superintendent of the docks took place, then Cutting had no authority to bind defendant on the 15th July, 1850.

Lamothe *v.* St. Louis Marine Railway and Dock Co.

The court, of its own motion, instructed the jury as follows:

If the jury believe from the evidence, that Cutting was superintendent or foreman for defendant when the contract was made with plaintiff for the docking and repairing of his boat, and that he made on the part of defendant said contract with plaintiff, then any agreement or acts of said Cutting, on the 15th of July, within the scope of the powers of said foreman or agent, so far as the plaintiff was concerned, would bind the defendant, unless the plaintiff or his agent acting for him at the time, was informed and knew that said Cutting had ceased to be foreman or superintendent for defendant.

If the plaintiff, or plaintiff's agent, acting for him, on the 15th of July, knew that Cutting had ceased to be the foreman or superintendent of defendant, and had no authority to take possession of the boat, under the circumstances, then the defendant is not liable therefor.

If the custom or general duties of foreman or superintendent included the taking charge of boats under the circumstances proved, then the foreman or superintendent had authority so to do, so as to bind the defendant; otherwise not.

The defendant is not liable for any neglect of Cutting to save the boat, unless Cutting was, at the time, agent for defendant and the boat under charge of defendant.

1. From the facts in this case, it will be seen that the only points necessary for the consideration of this court, arise upon the instructions given and refused by the court below. The evidence being conflicting and contradictory, the facts involved were for the determination of the jury; and if the law of the case has been so given as to present the whole case in a proper light before the jury, that must end the controversy.

Whether Cutting or Perkins was, on the 15th day of July, (the day the boat was brought down to the company for repairs,) the agent of the company, at the time the boat was received, cannot alone determine the rights of these parties. Cutting had been the agent; a correspondence or conversation about the repairing of the boat had taken place before that

day, between Cutting, as the agent and superintendent of the company's dock, and Gilky, the agent of the plaintiff. Gilky brought the boat down ; Cutting was there at the company's docks ; Gilky says Cutting took charge of his boat and promised to take care of and repair her as soon as the docks became empty. The company contends that on Saturday, the 13th July, Perkins came home from his visit to the east, and commenced his business for the company on Monday, 15th July, the day the boat was brought, as the superintendent or agent of the company, and that Cutting was on that day no longer such agent or superintendent. He ceased to act as such on Saturday night previous. It is evident that Cutting had been the agent ; had, as agent, conversed about the repairing of this very boat ; had promised to write to let Gilky know when to bring his boat down ; that when the boat was first brought, he, Cutting, was not willing to receive her. There is testimony to these acts. Now in order to exonerate the company from the promises and acts of Cutting on the 15th July, with third persons, such persons must have knowledge of the fact, that Cutting was no longer the agent of the company. Between the company and Cutting, the relation of principal and agent might have ceased. But if third persons, not knowing that the relation had ceased, had bargained with Cutting, as the agent of the company, in good faith, such persons would hold the company responsible.

In looking into the instructions given by the court, we think that the whole transaction was properly laid before the minds of the jury ; that the merits of the case were fairly, under the law, put before them ; that the instructions refused could not have had a tendency to make the case more plainly understood by them. In the conflict of evidence, the jury must determine, and we have no disposition to interfere with them in matters so peculiarly within their province.

We consider the main point, the one about the character of Cutting on the 15th of July, and this we think a very plain one. Story on Agency, §470, speaking of the revocation of

the powers of agents, says : "In the next place, let us consider at what time and under what circumstances the revocation by the act of the principal takes effect. And here the rule of our law is equally clear and comprehensive and just. As to the agent himself, subject to what has been already stated, it takes effect from the time when the revocation is made known to him, and as to third persons when it is made known to them, and not before. Until, therefore, the revocation is so made known, it is inoperative. If known to the agent, as against his principal, his rights are gone ;- but as to third persons, who are ignorant of the revocation, his acts bind both himself and his principal."

Upon the whole case, then, as it was submitted to the jury by the court below, in the opinion of this court there is no error, and the judgment must consequently be affirmed. The other Judges concurring, it is affirmed.