Alleman v. Manning.

REBECCA J. ALLEMAN *et al.*, Appellants, v. GEORGE
F. MANNING, Administrator of the Estate of
GEORGE W. MANNING, Deceased,
Respondent.

### St. Louis Court of Appeals, February 10, 1891.

1. **Estoppel: ADVANCEMENT.** If a decedent takes for a debt due to
himself notes payable to the children of one of his daughters,
intending the same as an advancement to such daughter, and if
the daughter, being aware thereof at the time, fails to advise her
father of her unwillingness to accept this appropriation as an
advancement to herself, she will, after her father's death, and on
the distribution of his estate, be estopped from disputing the valid-
ity of the advancement, and from claiming that the appropri-
ation was merely a gift to her children.

2. **Practice, Appellate: PRESUMPTIONS.** When the transcript con-
tains only a synopsis of the evidence, this court is bound to con-
strue it so as to support the judgment of the trial court, when it
reasonably admits of that construction.

*Appeal from the McDonald Circuit Court.*—HON.
JOSEPH CRAVENS, Judge.

AFFIRMED.

*George Hubbard* and *J. C. Lamson*, for appellants.

*J. L. Barr* and *H. C. Pepper*, for respondent.

ROMBAUER, P. J.—George W. Manning died intes-
tate, and letters of administration on his estate were
granted to the defendant, who made her final settle-
ment in November, 1889. It appeared by such settle-
ment that there was in the hands of the administrator
the sum of $1,532.69 for distribution, and the probate
court ordered an equal distribution thereof between the

seven children of the deceased and his widow, without taking into consideration any of the advancements made by the decedent to his children in his lifetime. From this order the plaintiff Rebecca, a child of the decedent, - appealed. In the circuit court the cause was retried upon an agreed statement of the facts filed by the parties, by which it stands conceded that the decedent made certain specified advances to each of his seven children, and that the administrator paid to each of them, as also to his widow, the sum of $900 during administration. The advances thus made to the children the circuit court ordered to be brought into hotchpot under the provisions of section 2166 of the Revised Statutes of 1879, which reads as follows :

"When any of the children of the intestate shall have received, in his lifetime, any real or personal estate, by way of advancement, shall choose to come into partition with the other parceners, such advancement shall be brought into hotchpot with the estate descended."

The circuit court then made an equal distribution of the entire estate of the decedent between the children and the widow, taking into consideration the advances made to each child. From this order the plaintiff Rebecca appealed, and she now claims that the court erred, under the conceded facts of the case, in charging her with the sum of $800 as an advancement, when in fact such amount could not be treated as an advancement to her, because it was given by the decedent to her children, and not to her. Whether this contention is correct, is the only question presented by this appeal.

The point arises on the following part of the agreed facts and uncontroverted evidence : "The deceased sold and conveyed to J. P. Manning a certain parcel of land, and, in payment for same, caused him to execute and deliver five notes for $200 each, payable one to Rebecca J. Alleman, and one payable to each of her four children ; the notes made to the children were delivered to

the said George W. Manning, and the one made payable to Rebecca J. Alleman was delivered to her after her father's death; these notes amounting to $1,000, as given her and her children, would, if charged against her, equalize the gifts to his children, and make her share equal to that received by the other children ( so far as the same would affect the result in this case ); that Rebecca J. Alleman received the said note, and also the money in payment of the said note, after George W. Manning's death, with full knowledge that these notes were claimed by the other heirs to have been given for the purpose of making her share equal to that received by the rest of his children ; that she advised and agreed to the appointment of J. P. Manning as curator for her four children for the purpose of taking charge of said notes as part of the property belonging to her children, after his death ; that Rebecca J. Alleman advised one of said children, after she became of age, to collect said note off of the said J. P. Manning, and that he paid the said child the note ; that the deceased left surviving him only the seven children and widow above mentioned ; that deceased died intestate ; that he came to McDonald county with the express purpose of settling his children in life and providing for them out of his property, and soon began to do so by procuring and conveying, or having conveyed, real estate and other property; that his first wife, the mother of his children, died ; that, in view of his second marriage, he expressed a purpose to divide out the bulk of the remainder of his property amongst his children, and retain only a competency for himself and new wife, and he wanted to equalize the amounts passing to his children ; that, in pursuance of such purpose, he increased the amounts to the figures, set out in the above stipulations, in lands, notes and money ; that, as part of the transaction, he conveyed to one of his sons a farm at $2,000, of which one-half was to be for his own benefit, and (for) the other half took the five notes

for $200 each, mentioned in the stipulations, one of which was offered to Mrs. Alleman, as hers, by the maker, but which she refused to receive, because she thought she should have more, and was informed her father meant to give $800 to her children and charge it up on her share, though he did not so propose in person to her, nor did she ever assent thereto ; that the deceased mentioned to others, as a reason why he desired to give to his grandchildren, as he did, that their mother might badly manage and lose her property, and they would have nothing when they most needed means ; that, at the time Mrs. Alleman refused to receive the note for $200 offered her, her husband said he would take it, and did so and put it away, but it was subsequently returned, and it was found to be, not to Mrs. Alleman, but to one of her children ; that Mrs. Alleman, when informed by her brother that the notes to her children might be charged up to her on her advancement, refused to sanction that, and declared her father had not treated her right."

It further appeared in evidence that the decedent gave to each of his other daughters by way of advancement $1,700 and gave to the plaintiff Rebecca in person $900, of which $200 were given to her at the same time when he gave the $800 in notes to her children, so that, taking this $800 as an advance, the advances to her were equal in amount to those made to each of his other daughters.

The following declarations of law requested by the plaintiff were refused.

"2. That, although it may be found that the intestate gave $800 in notes to the children of the appellant, Mrs. Alleman, and intended that the same should be charged against her as an advancement ; still, in the absence of her assent thereto, the same cannot be charged to her on her distributive share."

"4. That a gift by the intestate to a grandchild or grandchildren, in the life of its or their parent, cannot

be charged against such parent as an advancement out of the estate of the donor.''

The section of the statute above set out, which governs this proceeding, has been repeatedly construed by the supreme court and by this court. *Ray v. Loper*, 65 Mo. 470 ; *Nelson v. Nelson*, 90 Mo. 460 ; *In re Elliott*, 98 Mo. 379 ; *In re St. Vrain*, 1 Mo. App. 294. The statute has never received a literal interpretation. Although it speaks only of children who shall choose to come into partition with other parceners, it was always held that the probate court in making its order of final distribution between the children of the intestate, has full power to charge against their share advances made to them .respectively, regardless of the fact whether such advances were made in land, personal property or money. If any doubt ever existed on that question it was finally set at rest by the decision of the supreme court in *In re Elliott, supra*.

'' We have in this state no statute,'' says Judge BLACK in *Nelson v. Nelson, supra*, '' which determines by what evidence an advancement made to a child shall be proved, as seems to be the case in some of the states, and hence the proof may be made by cotemporaneous memoranda, charges in the form of accounts, or *by parol evidence*.'' We may add to this that we have no statute defining advances, as they have in many other states. Our statutes recognize no *right* of inheritance on part of the child, as against the will of the parent, but the parent's estate is subject to the absolute disposition of the parent; hence it logically results that the question is not, whether the child was willing to receive any specific amount which the parent gave to it, or paid for it, or on its behalf as an advancement, but whether the parent so intended it to be. In *Ray v. Loper*, *supra*, Judge HENRY, in giving effect to this idea, states that, '' when the parent gives property to the child, he may at the time fix upon it what value he pleases as an advancement, or he may do so in his will.''

Alleman v. Manning.

We take it to be the duty of all courts to give effect to the intention of a decedent in the distribution of his property among his children, unless prevented from doing so by positive rules of law. This duty was recognized in the most emphatic terms by the learned judge who delivered the opinion in *Hockensmith v. Slusher*, 26 Mo. 237. He approvingly cites the case of *Barber v. Taylor*, 9 Dana, 86, where it was held that a gift to a son-in-law, unless otherwise intended, is considered as an advancement to the daughter, although the husband may waste it and the wife derive no benefit from it.

The question then arises, is there any positive rule of law which prevents us in this case from giving effect to the decedent's intention to make an equal distribution of a certain part of his estate among his children? That such was his intention is quite clear from the facts agreed upon and given in evidence. It is suggested that we cannot treat that as an advancement, which the law does not recognize as such, as it is well settled that a parent cannot by a mere entry, without giving anything to the child, subject it to a charge for advances, nor can he do so by conveying property to a stranger, however manifest his intention may be to treat such conveyance as an advance made on behalf of the child. The money or property conveyed must be a conveyance for the supposed benefit of the child. Hence it has been held that money or property given to grandchildren in the lifetime of their parent are *prima facie* gifts, and should not be regarded as advancements either to the grandchildren or their parents (*Stevenson v. Martin*, 11 Bush. 485; *Shiver v. Brock*, 2 Jones N. C. Eq. 137); while, on the other hand, it is equally well recognized that advances made on the child's behalf need not be made to the child directly. *Bridgers v. Hutchins*, 11 Ired. L. 68, and that even, under a statute which requires an *acceptance* by the child, a formal acceptance is unnecessary. *Holliday v. Wingfield's Adm'r*, 59 Ga. 206.

The question here presented has never met with any express adjudication in this state, but the decisions of our courts, as above seen, carry the rule of giving effect to the intention of the parent, regardless of purely technical obstacles further than in most of the states. Yet, if the judgment of the trial court had to rest solely on the unmistakable intention of the parent, we might feel some embarrassment in giving effect to it in this case. But it does not rest on that alone. It is aided by facts, which, under the peculiar circumstances of this case, create an equitable estoppel as against Mrs. Alleman. She knew, when this $1,000 was given in part to herself and in part to her children, that her father intended it to be an advance to her. She knew that her brothers and sisters so regarded it. Under these circumstances it was her duty to advise her father in some manner that she did not so regard it or accept it. Had she done so, the inference is almost unavoidable that her father would have given effect to that intention by formal will, as he was at perfect liberty to do. Instead of doing so, she waited until after her father's decease, when this informal disposition of his property could no longer be formally rectified, before she asserted a claim, the effect of which would be the unequal distribution of her father's estate contrary to his manifest intention.

Under these circumstances, we think the court was justified in finding that the plaintiff acquiesced in the transfer of this property to her children as an advance made on account of her distributive share, and that the evidence adduced by her that she "never so assented" had reference to a formal assent only. As there is only a synopsis of the evidence before us, and as we are bound to construe it so as to support the judgment, when it reasonably admits of that construction, we must so construe that part of plaintiff's evidence.

The judgment is affirmed. All the judges concur.