Johnson v. Hurley.

---

JOHNSON *et al., Appellants, v.* HURLEY.

Division One, May 8, 1893.

1. **Specific Performance:** STATUTE OF FRAUDS: AGENCY. Where one, in good faith, makes valuable and lasting improvements on land of which he is in possession under a forged deed delivered to him by an agent authorized to contract for the sale of the land, and who did contract for such sale and receive the purchase money, assuming to act for his principals, there is such a part performance as to take the case out the statute of frauds and to authorize specific performance.

2. **Contract:** AGENT: BURDEN OF PROOF. The burden is on a person claiming the benefit of a contract made with another through one claiming to act as his agent to show by satisfactory evidence that the contract was within the scope of the agent's authority.

3. ———: ———: IMPLIED AUTHORITY. Where the conduct of a land owner is such as to have reasonably induced the defendant to believe that one with whom he dealt as agent had authority to make sale of the land, and the defendant acting upon such belief, paid the purchase price and expended large sums in improvements, such owner will be estopped to dispute the agent's authority.

4. ———: ———: ———. The authority of one to act as the agent of another may be implied from the conduct of the parties.

*Appeal from Rall's Circuit Court.*—HON. THOMAS H. BACON, Judge.

AFFIRMED.

VOL. 115—33

*Harrison & Mahan*, for appellants.

(1) The court should have sustained appellant's objection to the introdcction of the deeds in evidence as found on page 7 of the abstract. It is in effect admitted by the answer that the deed was forged; the answer counted on specific performance, which concedes that the deed was never made by appellants. The forgery was an illegal act and did not bind the appellants. 1 Evans on Agency, 92. (2) It was error in the court to admit in evidence the letters of F. A. Johnson. The declaration of one who assumes to act as agent is not admissible to establish agency. *Peck v. Richey*, 66 Mo. 114; *Sumner v. Sanders*, 51 Mo. 89. (3) And before acts of purchase can be shown, a foundation must be laid, showing authority of agent. *Ahern v. Boyd*, 26 Mo. App. 558; *Dellecella v. Harmonic Club*, 34 Mo. App. 185. (4) The court erred in finding from the evidence that F. A. Johnson was the agent of the appellants. Such evidence must be clear and distinct. A bare preponderance is not sufficient. *Simmons v. Kramer*, 13 S. E. Rep. 902; *Davis v. Gordon*, 13 S. E. Rep. 35; *Blair v. Sheridan*, 13 S. E. Rep. 414. (5) The uncontradicted evidence shows that F. A. Johnson was a special agent to obtain bidders for the land, and if he exceeded the special and limited authority conferred on him, his acts were mere nullities and not binding on appellants. J. G. Tilleth had no authority. Story on Agency, sec. 126; 2 Kent's Commentaries, sec. 41; *Davis v. Gordon*, 13 S. E. Rep. 37, and cases cited; *Hadfield v. Skeleton*, 34 N. W. Rep. 397; 2 Kent's Commentaries 824, and note; 1 Evans Pr. and Agt. 150. (6) Unless there is evidence of an express authority to sell, no title passes. Simply to procure an offer does not confer power to sell. *Levi v. Booth*, 42 Am. Rep. 336; 1 Evans Pr. and Agt. 167.

(7) Whoever deals with an agent is put on his guard by the facts, and it is his right and duty to inquire into and determine the agent's authority, and whether the contract about to be made will bind the principal. Mechem on Agency, sec. 289, and note. (8) The principal must have full knowledge of all material facts before the act of the limited and restricted agent could be ratified. *Ladd v. Hilbrant*, 9 Am. Rep. 450 and cases; Story on Agency, sec. 239; *Cunningham v. Bell*, 3 Pet. 81; *Bloomfield v. Bank*, 121 U. S. 121; *Taliaferro, v. Bank*, 17 Atl. Rep. 1039. This case does not come within the rule found in such cases as *Summerfield v. Railroad*, 62 Mo. 391. There the principals had written letters, in one of which the principal acknowledged that there was a "balance due on plaintiff's contract, and making inquiry about it and reminding him (the agent) that the contract was liable to forfeiture," thus showing on part of principal a knowledge and ratification of the contract. (9) The contract made by respondent with J. G. Tilleth and F. A. Johnson for the land was not in writing. Neither was there any memoranda of such sale. The contract was void. Revised Statutes, 1879, sec. 2513; *Allen v. Richards*, 83 Mo. 57; *Lydick v. Holland*, 83 Mo. 703; *Cullington v. Wingerter*, 57 Mo. 241. (10) The rule is fundamental that a contract will not be specifically enforced unless it is obligatory on both parties, nor unless both parties at the time it is executed have the right to resort to equity for its specific enforcement. It is plain that appellants could not have enforced this void contract against respondent. *Marble Co. v. Ripley*, 10 Wall. 340; *Bodine v. Gladding*, 21 Pa. St. 50; *Duvall v. Meyers*, 2 Md. Ch. 401; *German v. Machin*, 6 Paige, 288; *Boucher v. Vanbuskirk*, 2 A. K. Marsh. 345; *Norris v. Fox*, 45 Fed. Rep. 406. And where a contract is not specifically enforcable at the time when made, one

of the parties cannot, by subsequent performance of those conditions that could not be specifically enforced, put himself in a position to demand specific enforcement against the other party. *Hope v. Hope*, 8 De Gex, M. & G. 731–736; Fry, Specific Performance [3 Am. Ed. Notes] 443. (11) Under our statute of frauds requiring all contracts for sale of land to be in writing, ratification by appellants could only be made in writing with due knowledge of the circumstances, or by such conduct on part of appellants as misled the respondent. This record will be searched in vain for any such evidence. *Hawkins v. McGroarty*, 110 Mo. 546; *Palmer v. Williams*, 24 Mich. 328.

*Geo. W. Whitecotton* and *J. P. Wood* for respondent.

(1) Finley A. Johnson was the agent of appellants, fully authorized in the premises, or, if not fully authorized, appellants are estopped to deny such agency or limit the extent of his authority. Persons who hold out another as their agent and thereby induce third persons to deal with him as agent, are estopped as to such third persons from denying the agency. Story on Agency, section 127; *Summers v. Saunders*, 51 Mo. 89; *Brooks v. Jamison*, 55 Mo. 505. (2) "When one of two innocent parties must suffer by a third, he who has enabled such third party to occasion such loss ought to sustain it." *Rice v. Groffman*, 56 Mo. 434. "One who by his conduct has led an innocent party to rely upon the appearance of another's authority to act for him, will not be heard to deny the agency to that party's prejudice." Mechem on Agency, sec. 83. (3) Whenever a person has held out another as his agent * * * or when his habits and course of dealing have been such as to reasonably warrant the

presumption of agency, the authority of the agent will be conclusively presumed so far as is necessary to protect third persons who rely thereon, and he will not be permitted to deny that such other was his agent authorized to do the act that he assumed to do, provided that such act is within the real or apparent scope of the presumed authority. Mechem on Agency, sec. 84; *Gerhart v. Savings Inst.*, 38 Mo. 60; *Bronson's Executors v. Chappell*, 12 Wall. 68. (4) The statute of frauds has no application to the facts in the case at bar. Respondent took possession of the land under his contract, also under the deeds to him; he paid the full amount of the purchase money to appellants' agent; he made valuable and lasting improvements thereon. In such a case the statute of frauds cannot be invoked to defeat specific performance. *Bowles v. Wathan*, 54 Mo. 261; *Emmel v. Hays*, 102 Mo. 186. (5) If this were not so, the letters from appellants' agent to respondent is a sufficient memorandum of the contract to take the case out of the statute of frauds. *Johnson v. McGruder*, 15 Mo. 365. (6) The statute of frauds was not raised by the pleadings; not having been pleaded below it cannot for the first time be raised here. *Maybee v. Moore*, 90 Mo. 340.

MACFARLANE, J.—The suit is ejectment to recover possession of the northwest quarter, section 5, township 53, range 7, in Ralls county. The answer set up an equitable defense to the effect that defendant had purchased the land from the duly authorized agent of the plaintiffs, had received from said agent deeds purporting to be duly executed and acknowledged by plaintiffs and purporting to convey to him said lands; that he had paid to said agent the entire purchase price for the land, to-wit, $1,650, its fair value, and had been put in possession under his said purchase;

that he had in good faith fenced said land and erected thereon a dwelling-house and other valuable and permanent buildings and improvements, and prayed specific performance. The reply denied the new matter of the answer.

The cause was tried as a suit in equity for specific performance of a contract for the conveyance of land, and a decree entered for defendant according to the prayer of the answer, and plaintiffs appealed.

The evidence showed that about the year 1836 one Peter Johnson, a resident of Morriston, New Jersey, entered about twenty-five hundred acres of land situate in Ralls county, Missouri; that said Peter Johnson died in the year 1854, leaving plaintiffs John M. and Martha J. Johnson, and one Phoebe Johnson, since deceased, without issue, his only heirs at law. About the year 1868 plaintiffs appointed one Joseph R. Winchell, of Hannibal, Missouri, as their agent. Soon after this, plaintiff John M. moved to the state of Illinois, the two sisters remaining in New Jersey.

Winchell not proving a satisfactory agent, about the year 1878, plaintiffs sent out to Missouri Finley A. Johnson, a son of plaintiff John M. Johnson, then a lawyer and judge of Newark, New Jersey, to settle with Winchell. A settlement was made, Winchell discharged and the said Finley A. appointed in his stead without, as plaintiffs claim, authority to make sales of the land.

On the sixteenth of April, 1881, the said Finley A. Johnson, assuming to act as the agent of plaintiffs and their sister Phoebe, sold to defendant the east half of said northwest quarter for the sum of $800, and afterwards on January 10, 1882, he sold him the west half of said quarter for the sum of $850; that defendant paid the purchase money to the said Finley A. Johnson at the respective dates of sale and received from him deeds purporting to be signed and acknowledged by

plaintiffs and said Phoebe. Under these purchases defendant went into possession of the land which was then unimproved, fenced it, built a dwelling-house and other buildings thereon and reduced it to cultivation.

The evidence further showed that the deeds and the acknowledgments were forged by the said Finley A., and that plaintiffs never knew that contracts or deeds had been made or that money had been paid their agent until 1884, after he had absconded.

The question is whether these sales made by their agent were binding on plaintiffs.

I. The evidence leaves no doubt that plaintiffs' agent made the contracts with defendant for the sale of the land, assuming to act for them, that he received the purchase money, delivered a deed to which their names were signed and to which an acknowledgment, certified in due form by the said agent as notary public, was attached, and that under said transaction, and relying on it, defendant in good faith went into the possession and made valuable and lasting improvements. Under these circumstances, if said agent was authorized to make the sale, it would be the grossest injustice and fraud on defendant to deny him the benefit of the contract for the reason that it was not in writing as required by the statute of frauds. To prevent such injustice courts of equity have uniformly held that such part performance relieves the contract of the infirmity created by the statute, and specfic performance will not be denied. *Emmel v. Hayes*, 102 Mo. 193; *Bowles v. Wathan*, 54 Mo. 264.

II. The question then is, whether Finley A. Johnson had authority from plaintiffs to make a sale of these lands.

It may be stated, in the first place, as a general rule, that an agent can only act within the circumscribed authority given him by his principal, and one

who deals with him is put upon his guard by the very fact that he is dealing with an agent and he must ascertain for himself the nature and extent of his authority. The burden is, therefore, always cast upon one claiming the benefit of a contract made with another who assumes to act as the agent of a third person to establish by satisfactory evidence that the contract relied upon was within the scope of the agent's authority. Mechem on Agency, secs. 276–289, and cases cited.

III. The evidence we think fails to establish an express authority from the plaintiffs to the said Finley A. Johnson to conclude contracts for the sale of these Missouri lands, or to make the particular contract in question. Both of them in testifying in the case very emphatically deny such authority, and no evidence was introduced by defendant showing directly that any was given. The authority then, if any existed, must be implied or presumed from the conduct of the parties.

The general rule, which accords with the decisions in this state, is given by Mechem in his work on Agency, as follows: "It may therefore be stated as a general rule that, whenever a person has held out another as his agent authorized to act for him in a given capacity, or has knowingly and without dissent permitted such other to act as his agent in such capacity; or where his habits and course of dealing have been such as to reasonably warrant the presumption that such other was his agent authorized to act in that capacity, whether it be in a single transaction or in a series of transactions, his authority to such other to act for him in that capacity will be conclusively presumed, so far as it may be necessary to protect the rights of third persons who have relied thereon in good faith and in the exercise of reasonable prudence, and he will not be permitted to deny that such other was

his agent, authorized to do the act that he assumed to do, provided that such act is within the real or apparent scope of the presumed authority." *Rice v. Groffmann*, 56 Mo. 434; *Summerville v. Railroad*, 62 Mo. 391.

We are of the opinion that authority to make these sales is clearly implied from the conduct of the parties. One of the owners of the land, a preacher, lived in the state of Illinois, the other two, unmarried ladies, lived in the state of New Jersey. So far as appears no one of them ever visited the land or gave any personal attention to it. From 1868 to 1883 it was in the hands of agents for sale. For most of this time the said Finley A. Johnson, a son of one of the owners and a nephew of the other two, a lawyer, a notary public and judge of a court, who lived in the state of New Jersey, was one of the agents. The acknowledgment of deeds was made before him; he paid taxes; he delivered deeds to purchasers; he collected purchase money; took notes and deeds of trust in his own name for deferred payments; he removed other local agents and made settlements with them; he was in fact for years the medium through whom all the business was transacted.

Plaintiff John M. Johnson testified on direct examination: "The authority of Finley A. Johnson as given him by us in reference to our Missouri lands was to look after the payment of taxes, receive applications and offers for the land and the terms, and to transmit the same to us, and when these applications, offers and terms were considered by us they were referred back to him with instructions. He had no authority whatever to sell the lands or to close the sales for lands. That was done by us. He only received proposals to purchase. We never gave him any written authority or power of attorney. I never heard of the sales to defendant Hurley or the Hurley deeds until long after the purported deeds had passed."

The other plaintiff gave substantially the same testimony.

On cross-examination, the said John M. Johnson testified: "We sent the deeds on to him (referring to a former agent) and he collected and kept the money. My son, F. A. Johnson, discharged him, and he became our agent in 1873. I do not know definitely who paid the taxes from then until 1883, but suppose that he did; he was to pay them. From 1873 to 1880 there were a few sales of the Missouri lands made. These sales were made through the agency of F. A. Johnson in some form. Made virtually by me, he collected the purchase money. I authorized him to do that. The deed to W. L. Schultz made August 31, 1873, is a genuine deed signed by us, and the acknowledgement was made before Finley A. Johnson, who was then a notary public and judge of a court in New Jersey. That sale was made as usual by being submitted to and ratified by myself and sisters; it could not be a complete sale otherwise. I don't know who the consideration was paid to. In 1878 James F. Hedrick purchased some land of us; our signatures to his deed are genuine. I do not know who made the sale, but know under the general conditions of sale F. A. Johnson made the sale and it was ratified by us. I presume F. A. Johnson delivered the deed and collected the purchase money. We also sold some land to Thomas J. Richards and Jehu Underwood in 1880. Our signatures to the deed are genuine and the acknowledgments of my sisters were made before F. A. Johnson. I never delivered any of the deeds myself; the money for the purchase of the lands was paid to Finley A. Johnson, and he delivered the deeds. I presume this was usually the case. The leases to such lands as were leased, I think, were made by F. A. Johnson, and he collected the lease money. Finley A.

Johnson was my son, and a rising man; of course I was proud of him. I trusted him, and yet not so implicitly as to permit him to transact my business without first referring it to me. In fixing the prices of the land we were generally governed by the offers made by the purchasers and referred to us. I presume his judgment was taken after he had made a personal inspection of the land. The land was all for sale. He paid money to me on these sales without telling me where it came from, and of course I cannot remember the particular transaction.''

The manner in which this business was transacted through this agent for ten or more years was known in the community and to defendant. All inquiries in regard to the land were made of this agent; prices were given by him; purchase money paid to and deeds received from him; lands leased and rents collected by him, and all under express authority. There was also evidence that a former agent, the one removed by Finley A., made sales and executed contracts upon which plaintiffs afterwards made deeds. That agent was removed for withholding money and Finley A. was appointed with express authority to collect purchase money. Why this agent with all these express powers should have been restricted only in the matter of making sales is not explained by the evidence.

We think the conduct of plaintiffs in the transaction of this business such as would reasonably have induced defendant to believe that the agent with whom he dealt had authority to make the sales, and after having acted upon that belief, paid the purchase price and expended large sums in improvements, plaintiffs will not now be heard to dispute the authority.

We are well satisfied with the conclusions reached by the circuit judge, and affirm the judgment. All concur, except BARCLAY, J., who is absent.