City of Springfield for the Use and Benefit of Harry G. Horton, Respondent, v. Edgar V. Koch and Victor E. Koch, Appellant. —72 S. W. (2d) 191.

Springfield Court of Appeals. April 2, 1934.

Rehearing denied June 6, 1934.

*R. A. Pearson* for appellant.

*V. O. Coltrane* for respondent.

ALLEN, P. J.—The petition in this case is in seven counts, each of which is based upon a contractor's bond for the faithful performance of the several contracts of defendant, Edgar V. Koch, contractor with the city of Springfield, for the construction of certain street improvement, therein stated.

The appellant, V. E. Koch, purports to be the surety on the bonds of Edgar Koch, his codefendant, which bonds are the subject-matter of this action.

The relator, Harry G. Horton, is the materialman to the use of whom the suit is brought upon his claim, for crushed stone, furnished to and used by Edgar, in the construction of said improvements.

The aggregate of the claims of respondent, for which judgment was had, is $1660.59.

The only issue involved in the consideration of this case is the question of the liability, if any, of appellant, Victor E. Koch, whose name appears as surety in the seven bonds in suit. Touching that issue the facts in evidence are as follows:

Edgar V. Koch, the contractor and principal in each of the bonds and Victor E. Koch, whose name appears on each of them as surety, are brothers.

Victor, who had from 1907 been doing general contracting, street paving, sewer and sidewalk construction, commencing in 1911 and continuing to the summer of 1929 took contracts for such work in the city of Springfield. His brother, Edgar, for a part of that time lived in Springfield, and during much of the time from 1911 to 1929 represented his brother, Victor, in connection with his bids and contracts for street improvement, in the city of Springfield, often taking

contracts for such in his own name, as principal, with Victor as surety on the bond therefor. The evidence shows and Victor admits, that Edgar had not only submitted the bids, took and signed such contracts and bonds as contractor, but also, with his consent, signed Victor's name to the bonds, as surety, thereafter assigning the tax bills to Victor and that he, Victor, in such cases paid all claims for labor and material. Some forty-seven or forty-eight of such contracts and bonds, over a space of five or six years, next before the execution of the contracts and bonds in this case, and so signed, were in evidence and admitted by Victor to have been his in reality.

The contracts taken and bonds executed in the seven transactions mentioned in respondent's petition in this cause, were taken and executed in the same form and ostensibly by the same persons as the previous forty-seven or forty-eight transactions in evidence. The execution of the bonds sued on in this case occurred from about July 8, 1929, to December 18, 1930. Some time previous to execution of the bonds in suit, the appellant had some sharp words with Mr. Culler, who was then city engineer, after which all the contracts of the appellant with the city of Springfield, were taken in the name of his brother, Edgar, with appellant signing as bondsman. This being done for the reason that the city council refused to award him (appellant) any further contracts. However, the evidence discloses that in such cases the name of appellant on the bonds was generally signed by his brother, Edgar, but the tax bills were by him assigned to appellant, who received the money and paid the bills incurred in the completion of the contracts.

The evidence discloses that about the month of July, 1929, and continuing to December, 1930, the defendant, Edgar, with appellant again appearing as surety, took the seven contracts secured by the seven bonds in issue. That no notice or information of appellant's objection, was given to or received by the council or the respondent, until after the execution of the bonds in suit and the completion of the work done by Edgar, in compliance therewith.

Appellant testified that about the middle of 1930 he told Mr. Horton, the respondent, that Edgar was for himself but did not tell him that he was not authorized to sign his (Victor's) name as surety, on any bonds, nor did appellant testify that he ever told any officer of the city at any time that Edgar was not authorized to sign his (appellant's) name to any of the other bonds in evidence. Edgar, however, testified that he signed appellant's name as surety on the bonds in suit, as he had been accustomed to do, and that appellant did not attempt to revoke his authority to sign his name as surety until January, 1931, after all the materials for the jobs mentioned in plaintiff's petition had been purchased and used. That appellant always paid the claims for labor and materials on all other jobs con-

tracted for, and which were secured by bonds signed exactly the same as in this suit, that is the name of Victor as surety, being signed by Edgar, who was ostensibly the contractor, when in truth Victor was the principal in the job and Edgar was his employee, on a salary, neither the city nor the materialmen having any knowledge of the true facts in the previous jobs or the jobs in suit.

The circuit court, upon the facts as stated, found the issues in favor of the respondent, upon each of the counts in his petition, from which Victor E. Koch, the bondsman appealed.

There were no separate assignments of error.

The evidence shows conclusively, that Edgar V. Koch had for a number of years, with the knowledge and consent of his brother, Victor, been signing his (Victor's) name as surety to like bonds to the city of Springfield. Appellant took no steps to prevent it nor gave any notice that it was unauthorized, therefore, Edgar's authority to bind appellant will be presumed. [Rice v. Groffman, 56 Mo. 434; Weaver v. Ogletree, 39 Ga. 586; Meechem on Agency (2 Ed.), secs. 262, 263.]

"It is the general rule that the acts of a former general agent within the scope of his original authority will, notwithstanding its revocation, continue to bind the former principal to those parties to whom the agent has been thus accredited, and who deal with him in good faith in reliance upon his former authority until due notice of his revocation in the manner required by the law for the class of persons to which they belong." [1 Meechem on Agency (2 Ed.), sec. 628.]

An agent is a competent witness to establish his own agency, or it may be implied from the conduct and acquiescence of the principal, or from the course of business between them and their actions in the business community. [Hanbelt Bros. v. Mill Co., 77 Mo. App. 672; Johnson v. Hurley, 115 Mo. 513.]

"For an agent's authority to do a given thing to be inferred or implied from the agent's previous conduct, and the principal's acquiescence therein, the acts relied upon as establishing the scope of the agency by implication must be of like character, to that which gives rise to the controversy." [Schaffer Bros. & Powell Mfg. Co. v. Williams, 52 S. W. (2d) l. c. 459.]

"Where the principal has recognized another as his agent by adopting and ratifying his acts done in that capacity, he will not be permitted to deny the relation to the injury of third persons, who have dealt with him as such." [Ozel F. Summerville v. The Hannibal & St. Jos. R. R. Co., 62 Mo. l. c. 393; Bennett v. Potashnick, 214 Mo. App. l. c. 513, 257 S. W. 5, l. c. 838; Austin-Western Road Mach. Co. v. Commercial St. Bk., 255 S. W. 7-9, l. c. 588.]

The Statute of Frauds does not apply where there has been a full and complete performance of the contract by one of the contracting parties. Both the city of Springfield and Harry G. Horton have

done what they were required to do, under the contract. There was a full and complete performance of their part. The plaintiff may sue upon the contract in a court of law. He is not compelled to abandon the contract and sue in equity or upon a *quantum meruit*. [Bless v. Jenkins, 129 Mo. 647; McGinnis v. McGinnis, 274 Mo. 285, 202 S. W. 1087; Self v. Cordell, 45 Mo. 345; Suggett v. Cason, 26 Mo. 221; Johnson v. Hurley, 115 Mo. 513; 27 C. J. 350.]

The evidence shows that the materials mentioned in plaintiff's petition were delivered to defendant, Edgar Koch, for the purpose of being used and were used in the construction of the improvements mentioned in the various counts. Delivery of materials at the place of use establishes prima facie the fact of their use and places the burden of showing the contrary upon the defendants. The burden of proving any materials furnished were not used in the construction of work devolves upon the defendants, for the reason that their means of information and opportunity to know that they were not so used, are greater than those of the plaintiff. The materialman is not required to stand by and watch the progress of the work to see that every piece of material supplied by him is used.

There was no evidence that any of the materials were diverted from the use for which they were sold and delivered. [71 A. L. R. 110; Lumber Company v. Harris, 107 Mo. App. 148; Crane v. Smith, 187 Mo. App. 259.]

Recovery for materials furnished on public work is not limited to what could be recovered under the mechanic's lien law. [Hilton v. Universal Const. Co., 216 S. W. 1034.]

Defendant, Edgar Koch, testified that they were used in constructing the improvements. This testimony authorized the court to find, and it did find that the material sued for was used in the construction of the work described in the petition. [State v. Lyle, 5 S. W. (2d) l. c. 455.]

When the abstract of the record contains only a synopsis of the evidence, the court should construe it so as to support the judgment of the trial court, when it reasonably admits of that construction. [Alleman v. Manning, 44 Mo. App. 4; Shelley v. Ozark Pipe Line Corp., 247 S. W. 472.]

As between the principal and third persons, their rights and liabilities are governed by the apparent scope of the agent's authority which is that authority which the principal holds the agent out as possessing or which he permits the agent to represent that he possesses and which the principal is estopped to deny. [Carthage First Natl. Bk. v. Mutual Benefit L. Ins. Co., 145 Mo. 127; Underwood Typewriter Co. v. Century Realty Co., 165 Mo. App. 131; Johnson v. Hurley, 115 Mo. 513.]

A general or continuing agency having been shown, he who relies on the principal's revocation must show notice given thereof; and, as

against persons theretofore accustomed to deal with the agent as such notice must be brought home to them. [Lamothe v. St. Louis Mar., etc., R. Co., 17 Mo. 204; Waters-Pierce Oil Co. v. Jackson Junior Zinc Co., 98 Mo. App. 324; 2 C. J. 539, sec. 165; Chaflin v. Lenheim, 66 N. Y. 301, 305.]

The defendant, Edgar Koch, was not contracting with himself nor with his brother Victor, as surety. The parties to the contract in controversy were on the one hand the city of Springfield, for the use and benefit of Harry G. Horton, and on the other the defendants, Edgar and Victor Koch.

Where a party has so acted, that another is led to believe in the right of a third person to act as his agent, if any loss occurs by reason of any act of the supposed agent, the loss must fall on him whose conduct caused the mistake. [Cupples v. Whelan et al., 61 Mo. l. c. 586.]

The statute reads that the "bond among other conditions, shall be conditioned for payment of material, lubricants, oil and gasoline used in or consumed in the construction of such work, and for all labor performed in such work, whether by subcontractor or otherwise." [Section 2890, R. S. 1929.]

The provisions of the statute are to be read into the bond. [Fogarty v. Davis, 305 Mo. 288, 264 S. W. 879.]

As heretofore appears in the statement of the evidence in this case, appellant for several years previous to the letting of the contracts to his brother, Edgar, in this case and the signing by Edgar of his name as bondsman in this case, had allowed Edgar to continuously sign a large number of contracts for street improvements as the principal and to sign appellant's name as bondsman, when in fact, he, appellant, was in secret the real contractor, yet when he found that Edgar had entered into the contracts in suit as principal, with his name on the bonds as surety, he failed to give the city timely notice or to inform respondent, Horton, that this brother Edgar, no longer had any authority to sign his name as surety, though he then knew that Edgar had done so in the matter of the bonds in suit. He, therefore, by reason of such negligence estopped himself from denying liability on the bonds, to which he knew his brother Edgar had previously appended his name as bondsman, as had been his custom for a long time previous thereto. It is true that estoppel must, as a rule be pleaded, if relied upon either as a defense or as a basis for the enforcement of a right of action, but the facts in this case, so far as they relate to the question of the liability of appellant herein, were peculiarly within the possession of appellant and his brother Edgar. It is true estoppel must generally be pleaded in order to make it an issue, but it certainly cannot be said that if, as in this case, the facts be as they herein appear and that faith and credit must have been

extended by reason of the long continued custom and practice, and that suddenly as from a clear sky, the parties between whom the relations long shown to have existed, announce that although the circumstances were in truth and in fact as they appeared to be and were continuously and faithfully performed but were in this cause abandoned without any notice whatsoever to the city with whom they had so contracted, or had dealings, yet one of whom though he stood in the confidential relation not only as a brother but as a business agent, fully trusted, so far as respondent knew, not only to negotiate important contracts, but to sign his own name as principal to contracts, that were really appellant's and to sign appellant's name to the bonds required by the statutes in such cases. They must be required to know that there naturally arises, by reason of such practice and such relation, a most natural conclusion and confidence, upon which those with whom they were associated or related, may reasonably rely. Such was the situation of the parties to this case. Certainly appellant could not have reasonably expected the trier of the facts herein to extricate him from the results of his own negligence, which as shown by the evidence and evidently so found by the trial court, was at least far greater than that of respondent, if any.

We are constrained to agree with the finding of the learned trial judge, and therefore his judgment herein is affirmed. *Smith* and *Bailey, JJ.,* concur.