SINCLAIR REFINING COMPANY, APPELLANT, v. FARMERS BANK OF PORTAGEVILLE, RESPONDENT.—91 S. W. (2d) 122.

Springfield Court of Appeals. March 3, 1936.

*Walter E. Brown* and *Oliver & Oliver* for appellant.

*Ward & Reeves* for respondent.

SMITH, J.—This is an action at law begun by the plaintiff against the defendant, in April, 1934, wherein the plaintiff, seeks to recover $672.43, being the amount of nine checks. Eight of these were issued by the Service Oil Company on the Bank of Caruthersville, and one by Walker and Sons on the Farmers Bank, in all of these checks the Sinclair Refining Company was the payee, and which were cashed by the Farmers Bank of Portageville, the defendant herein, for A. E. Lumert, who endorsed all the checks by writing the plaintiff's name thereon.

The plaintiff's petition is in two counts, the first of which charges the defendant with the conversion of said checks, and the second count charges that the defendant was the trustee for the plaintiff of the checks in question amounting to $672.43. The answer admitted the corporate existence of the plaintiff, the cashing of the checks in question, but denied the defendant converted the checks to its own use and benefit or that it was the trustee for the benefit of the plaintiff in the handling of said checks and further answering alleged that the checks in question were cashed by A. E. Lumert, the duly appointed agent and representative of the plaintiff in the Portageville territory, and charges that the said Lumert had authority to cash said checks inasmuch as he was responsible to the plaintiff for all collections, and that the checks in question were received by Lumert as collections; that the said Lumert was required by the plaintiff to forward to them post office money orders, and that the checks were cashed by Lumert, deposited with the defendant and were checked out later for the purpose of securing such money orders; that plaintiff was familiar and had full knowledge that Lumert was cashing said checks as agent to get post office money orders; that defendant had reason to believe that Lumert was duly authorized to so act and endorse said checks; that all money deposited by Lumert was checked out by him without any remuneration to the defendant; that Lumert was personally responsible for said checks and had made bond to protect plaintiff against any loss by any mismanagement or misappropriation of said funds; that this defendant was no party to the failure of Lumert to report any such collections.

The cause was tried on the 15th day of May, 1934, at the regular May term of the Circuit Court of New Madrid County, and at the close of plaintiff's case defendant demurred to the testimony which was overruled. Again at the close of the whole case the defendant offered demurrers "A" and "B" to the first and second counts respectively of the plaintiff's petition, which demurrers were overruled. The defendant at the close of the whole case after the overruling of the defendant's demurrers, moved the court to require plaintiff to elect upon which count it would go to the jury in this case, which was overruled by the court. The case was submitted to the jury. Plaintiff offered four instructions, which were given by the court just as offered and the court refused a fifth one for the plaintiff. The court gave two instructions for the defendant. The jury returned a verdict for the defendant. The trial court rendered judgment for the defendant and overruled plaintiff's motion for a new trial. Plaintiff accordingly appealed to this court.

We shall consider the several assignments presented, with the facts of the case as shown by the record before us.

The second, third and seventh of these assignments may be considered together. These assignments are as follows:

"II.

"The court erred in refusing to find and hold that under the law and the evidence plaintiff was entitled to a verdict and judgment in this case.

"III.

"The court erred in failing to observe that all of the sums sued for as represented by Exhibits 1 to 8, both inclusive, and totaling $510.41, were drawn upon a bank other than the defendant bank and that as to those funds defendant bank was an intervening or intermedling bank as defined by the courts of this State, and that as to said sum plaintiff was entitled to a directed verdict."

"VII.

"The verdict is obviously the result of prejudice and passion, fanned to a flame by defendant's method of conducting the trial."

It may be readily seen that the above assignments are directed at the alleged error of the trial court in not directing a verdict for the plaintiff. This of necessity requires an examination of the testimony in the most favorable light to the defendant.

The evidence is uncontroverted that the defendant cashed the nine checks in question. Eight of these checks were upon a bank other than the defendant bank. The ninth was on the defendant bank. Lumert endorsed the checks by writing the name of his employer, the plaintiff in this case, on the back of each check, and either cashed them at the time or deposited them in the defendant bank in his own name and checked the money out later.

The record shows that the plaintiff is an out-state corporation, being incorporated in the State of Maine, and that it had numerous agents in Missouri and throughout the middle west, and that practically all of its business was transacted through the local agents. The record shows that these local agents were required to make application for a bond to protect the plaintiff against such transactions as occurred in this case, and that A. E. Lumert applied for such a bond when he was employed. The record also shows that Lumert entered into a written contract with the plaintiff and this contract, which was introduced in evidence, covered and restricted Lumert's conduct and dealings with the plaintiff, and as between the plaintiff and Lumert there can be no question but that the written contract was binding. But the written contract is not necessarily binding on the defendant bank, for there is no evidence, that the bank or any of its officers had any knowledge of the existence of any written contract between the plaintiff and Lumert. We shall have more to say about this written contract later.

The evidence discloses that Lumert was given a specific territory in and around Portageville in which to sell the products of the plaintiff and he was required to and did collect for the same, and that he was required to report said sales and collections to the plaintiff

two or three times a week. It is also disclosed by the evidence that at the time Lumert was employed by the plaintiff, a representative of the plaintiff called upon the cashier of the bank and told him that A. E. Lumert had been employed by the plaintiff and that any favors shown Lumert would be appreciated, and in that conversation there was no instructions given the bank as to how the checks given the company should be handled.

The evidence shows that from the time of Lumert's employment in June, 1931 until he was removed in September, 1932, he had an account with the bank and repeatedly from the time of his employment endorsed the checks made payable to the plaintiff and either cashed them or deposited them to his own account, and frequently for the first six months remitted by draft to the plaintiff. In December, 1931 a letter was written to Lumert by a representative of the plaintiff advising him to discontinue sending drafts to cover his collections. There is no evidence that the bank officials had any knowledge of Lumert's having received this letter, and several drafts were sent by Lumert and received and accepted by the plaintiff after this letter was sent him. The bank was not notified at any time by the plaintiff that it was not satisfactory for Lumert to secure and send the drafts.

The record also shows that Lumert was checked by agents of the company at least once a month for the last fifteen months he worked for plaintiff, and that Lumert told these agents how he was handling these checks and the money, and that no objection was made by these superior agents as to how he was handling the funds. Because he was having trouble with some of the checks received by him and which he sent to the plaintiff, he finally got to cashing all the checks at the bank and would buy post office money orders and remit in that way. There was no objection from the plaintiff at any time made to the bank as to the manner in which Lumert was handling these funds through the bank, although there is evidence that these superior officers had knowledge of the way he was handling the funds.

It is the contention of the plaintiff and was its contention at the trial of the case that the defendant is bound by the written contract between the plaintiff and Lumert and by the contents of a letter written to Lumert by the plaintiff. The written contract sets out specifically the terms of the contract between them and how the funds should be handled and had no provision in it allowing the cashing of the checks by Lumert. It is not necessary to set out the contract here because it is very lengthy, but there is no doubt in our mind that under the written contract Lumert had no authority to cash the checks and receive the money himself. The letter of December 1, 1931, is as follows:

"We have just been advised by the Accounting Department that you are forwarding drafts to cover your Form 236 reports.

"At the time our depository bank closed its doors December 2, 1930, we advised as to the handling of company funds; however, as Mr. Hunter was agent at that time, it might be that our instructions were lost or misplaced. At the time you were checked in, under date of June 19, 1931, our field representative issued verbal instructions as to the handling of company funds. We note, however that you are not following these instructions and, for your information, we are giving below instructions as to how all company funds should be handled:

"Purchase Post Office or Express Money Order for all *currency and silver* received, Money Order and all checks to be sent to the District Office attached to your report. Each check and Money Order should be listed on the back of your 236 report, showing opposite each amount the maker's name or, if the check is not drawn in favor of Sinclair Refining Company, the name of the last endorser (the party that check is received from).

"The total of checks and Money Order should equal total shown on face of report less cost of purchasing Money Order which should be shown as Discount and Exchange in the space provided on face of report. Kindly acknowledge receipt and understanding in self-addressed envelope enclosed."

The contract and the above quoted letter make it very definite and certain so far as the plaintiff and A. E. Lumert are concerned. But are these binding absolutely upon the defendant absent any evidence showing the defendant had knowledge of the contents of the contract and the letter? We think the result of this trial is not absolutely contingent upon these two writings.

The issue in this case is whether or not Lumert acted within the scope of his implied or apparent authority when he deposited the nine checks in the bank, endorsed the plaintiff's name thereon and drew out the cash. We think the plaintiff recognized in the trial of the case that this was the question at issue, and was the theory upon which the case was tried. The plaintiff submitted four instructions which were given by the trial court, and each of these instructions submitted the question that it was the duty of the bank "to have ascertained from the Sinclair Refining Company whether said Lumert had authority to endorse its checks or not." And we think those instructions were proper and properly submitted the issue of authority. It was a question for the jury as to whether or not he had authority, or apparent or implied authority.

We think the testimony in this case, a resume of which we have heretofore set out, is sufficient to make it a question of fact for the jury as to whether or not A. E. Lumert acted within his implied or

apparent authority in cashing the checks. This implied or apparent authority is to be gathered from all the facts and circumstances in evidence, and as between the principal, in this case the plaintiff, and a third party, in this case the defendant, their rights and liabilities are governed by the apparent or implied scope of the agent's authority. [City of Springfield v. Koch (Mo. App.), 72 S. W. (2d) 191, 194, and cases there cited; Robertson Canning Co. v. Davis (Mo. App.), 15 S. W. (2d) 882, 883, and cases there cited; Mead v. South Side Bank (Mo. App.), 14 S. W. (2d) 664, 668.]

It is not altogether what was in the written contract in this case that governs, but so far as the defendant is concerned it depended upon what Lumert actually did and was allowed to do by the plaintiff. See Austin-Western Road Machinery Co. v. Commercial State Bank, 255 S. W. l. c. 587, where this language is used:

"As to whether Bryson in fact had actual authority, we think that is not to be flatly and conclusively determined from the written contract existing between them, but rather from what Bryson actually did and was allowed to do, through a long course of time, with the knowledge and acquiescence of the plaintiff. Of course, in the absence of any other circumstances to the contrary, the written contract is the final arbiter of the power possessed by the agent; but if, without regard to what the parties actually did thereunder, a written contract must conclusively determine the powers with which an agent is invested, then it would be indeed an easy matter to limit and absolutely fix those powers in writing and then allow him elastic powers in fact, which could be made available whenever it was advantageous to the principal to do so and repudiated whenever it was to the principal's interest to do that."

This same case with the same principle of law was later affirmed in 282 S. W. 105.

So we hold against the plaintiff on the three assignments heretofore set out.

The fourth assignment is as follows:

"The court erred in admitting incompetent and prejudicial testimony and particularly in this, in admitting, over plaintiff's objection, the testimony of witness Lumert, as to what his duties and authority were when there had already been introduced in evidence the written contract and instructions fixing and determining same."

The plaintiff cites and relies on the Austin-Western case, supra, under this point. That case does hold as quoted from the syllabi, that "In the absence of any other circumstances to the contrary, a written contract between principal and agent is the final arbiter of the power possessed by the agent," but we think there are other circumstances to the contrary in this case.

An agent may be a competent witness to establish his own agency.

[City of Springfield v. Koch, 72 S. W. (2d) 1. c. 194.] An agency can be established by the testimony of the agent, or it may be implied from the conduct of the agent. [McCloud v. Telegraph Co., 170 Mo. App. 624, 630, and cases there cited, 157 S. W. 101, 103.]

The fifth assignment complains of Instructions A and B given for the defendant.

### No. A.

"Upon the first count in plaintiff's petition the court instructs the jury that it is admitted in this case by the defendant that the checks sued upon by plaintiff and in question in this case were issued to the Sinclair Refining Company and delivered to A. E. Lumert for and on behalf of the plaintiff, but the defendant denies that it wrongfully and without authority took over the possession and control of said checks and denies that it converted said checks to its own use and profit, and denies that the plaintiff has been damaged by reason of the checks in question.

"Now, therefore, you are instructed that the burden of proof in this case is upon the plaintiff to show that the defendant wrongfully and without authority took said checks and converted same to its own use and to show that the plaintiff has been damaged by reason of the checks being handled in the way they were handled in this case, and unless you find and believe by the preponderance or greater weight of all the evidence that such facts have been so established, then your verdict in this case should be for the defendant and against the plaintiff."

### No. B.

. "The court instructs the jury that if you find and believe from the evidence in this case that A. E. Lumert was the agent and representative of the plaintiff, Sinclair Refining Company, in selling its products and making collection therefor in certain territory in Pemiscot and New Madrid Counties, Missouri, and that as such he had authority from plaintiff to receive the checks in controversy in this case; and if you further find and believe that said checks and other collections made by said Lumert for plaintiff were charged to him personally and that he was personally responsible for said collections, and that in the handling of the checks in controversy and other checks made to the plaintiff in this case and in handling cash collections for the plaintiff, he had for the entire time he represented the plaintiff, if you find he did represent it, deposited said funds in the defendant bank in his own name and that during said entire time the plaintiff knew that he was making said collections in money and checks and depositing same in his own name in defendant bank and made no objection to or complaint against his acts, if any, in that behalf; and if you find and believe that the plaintiff herein required the said A. E. Lumert to send remittance for his sales and collections

to it in the form of post office money orders, and that said post office money orders could be purchased only with cash, and that it was necessary for said Lumert to get said checks cashed and to endorse plaintiff's name on said checks in order to get the money with which to buy said post office money orders, and that the plaintiff in this case knew of said facts and made no objection thereto; and if you further find and believe that said facts (if you find them to be facts) existed from June, 1931, to September, 1932, and plaintiff knew of such facts and knew that the defendant bank was receiving said money and checks and keeping same deposited in the name of said A. E. Lumert and said plaintiff made no objection thereto, and that the defendant believed Lumert had such authority; and that said Lumert checked out all of said money and checks deposited, as aforesaid, in defendant bank, and said bank did not receive any portion thereof and did not convert any part of said money to its own use, your verdict should be for the defendant."

The plaintiff cites us no authorities holding similar instructions improper. We have found none so holding. We think instruction B places a greater burden on defendant than is necessary, but we think it does not follow that it was error to so give it. We hold this point against plaintiff.

The sixth assignment complains of error in refusing its requested instruction numbered 5, which is as follows:

"The court instructs you that if you find the issues herein for the plaintiff you will assess its damages in a sum not to exceed the amount of the checks sued for, to-wit, $672.43."

There is no merit to this contention, for the very same instruction, almost word for word is included in instruction No. 2 given at the request of plaintiff. There could be no harm in refusing an instruction upon an issue that is fully covered by another given instruction.

It follows from what we have heretofore said that it is our conclusion that the court did not err in refusing to grant plaintiff's motion for a new trial, which point was raised in plaintiff's first assignment of error.

The judgment is affirmed. *Allen, P. J.,* and *Bailey, J.,* concur.