HAUBELT BROTHERS, Appellants, v. REA & PAGE MILL COMPANY, Respondent.

Kansas City Court of Appeals, January 2, 1899.

1. **Principal and Agent:** EVIDENCE. An agent is a competent witness to establish his own agency, or it may be implied from the conduct and acquiescence of the principal, or from the course of business between them and their actions in the business community.

2. **Fraud and Perjuries:** MEMORANDUM: AGENT'S SIGNATURE: PAROL EVIDENCE. A memorandum for the sale of goods may be signed for the vendor by his lawful agent, and though the agent sign his own name alone the principal may still be charged by parol evidence even though the contract gives no indication on its face of an intention to charge any other person than the signer, and the memorandum set out in the opinion in this case is held sufficient under the statute.

3. **Contracts:** AGGREGATIO MENTIUM: SECRET INTENTION: TELEGRAM v. LETTER. The meeting of minds, which is essential to a contract, is not determined by the secret intention of the persons but by their expressed intention; and in this case the parties are held bound where the agent made a contract under telegraphic instructions which were contradicted by a letter to which the telegram referred.

4. ———: TWO INNOCENT PARTIES: AGENCY OF TELEGRAPH COMPANY. Where one of two innocent parties to a contract must suffer by reason of the incorrect transmission of a telegram, the party sending the the telegram made the company his agent and must suffer.

*Appeal from the Saline Circuit Court.*—HON. RICHARD FIELD, Judge.

REVERSED.

REYNOLDS & LYNCH for appellants.

(1) The question raised primarily by this record is, was there a sale of flour by defendant to plaintiff. The contention of plaintiff is that there was, of defendant that there was not. "An agent is a competent witness to establish his own agency." Pump Co. v. Green, 31 Mo. App. 269; Leete v. Bank, 115 Mo. 204. "Again agency need not be established by proof of an express contract, but can be established by the habit and course of business of the principal." Mitchum v. Dunlap, 98 Mo. 421; Franklin v. Ins. Co., 52 Mo. 461; Brooks v. Jameson, 55 Mo. 512; Johnson v. Hurley, 115 Mo. 513. "Or it may be implied from the conduct and acquiescence of the principal." Sharp v. Knox, 48 Mo. App. 169; Cummings v. Hurd, 49 Mo. App. 139. (2) But, says defendant, Gardner was merely a broker, without any authority to make the sale in question. But does the fact that he was a broker make him any less an agent? "A broker is an agent with authority to sell." Tiedman on Sales, secs. 271, 272; Anderson's Law Dictionary, p. 138. (3) "As the fact of an agency may be established by the testimony of the agent, and by the known course of business of the principal, and may be implied from the conduct and acquiescence of the principal in the conduct of the agent, so may the scope of the agent's authority be shown." Mitcham v. Dunlap, 98 Mo. 421; Hull v. Jones, 69 Mo. 587; Edwards v. Thomas, 66 Mo. 468; Brooks v. Jameson, 55 Mo. 512; Franklin v. Ins. Co., 52

Mo. 461; Cummings v. Hurd, 49 Mo. App. 145; Sharp v. Knox, 48 Mo. App. 169; Gibson v. Zeibig, 24 Mo. App. 66; Grocery Co. v. Capen, 23 Mo. App. 301; Story on Agency, secs. 45-87; Mechem on Agency, sec. 86; Jewett v. Railroad, 10 Ind. 586; Cummings v. Hurd, 49 Mo. App. 145; Mabray v. Shoe Co., 73 Mo. App. 1. A party dealing with an agent has a right to rely in good faith upon his apparent authority, and it is not material whether his agency is general or special. Mechem on Agency, sec. 284; Rice v. Groffmann, 56 Mo. 434; McNichols v. Nelson, 45 Mo. App. 452; Maybray v. Shoe Co., 73 Mo. App. 1. (4) "The meeting of the minds, which is essential to the formation of a contract, is not determined by the secret intention of the parties, but by their expressed intention, the latter of which may be wholly at variance with the former." Brewington v. Mesker, 51 Mo. App. 348; Machine Co. v. Criswell, 58 Mo. App. 471; McNichols v. Nelson, 45 Mo. App. 452; Neuhoff v. O'Reilly, 93 Mo. 164. (5) There is no variance between the telegram as written and the letter. The variance is between the telegram as transmitted and the letter, the telegram being altered in its transmission; according to the established rules, the injury occasioned by the alteration must be borne by the party selecting the telegraph company as the agent. Bishop on Contracts, art. 328; Neuhoff v. O'Rielly, 93 Mo. 164.

D. D. DUGGINS for respondent.

(1) The appellants have no standing in court. There was no contract of sale entered into. No flour was delivered; nothing was paid as earnest money, and no contract or memorandum of any kind was made or signed by either appellants or respondent, nor by any person for them lawfully authorized by them. (2) The

witness, Gardner, was merely a broker. The evidence shows this, and the memorandum signed by himself shows that he did not intend to bind the respondent. (3) If Gardner was respondent's agent, then he most openly and flagrantly violated his positive instructions and wantonly and grossly exceeded his authority. If he did this then the respondent is not liable. Story on Agency, sec. 166; Parsons on Contracts [6 Ed.], p. 45. "A general agent can no more than a special one bind his principal by acts not covered by his authorization." Bishop on Contracts [Enlarged Ed.], secs. 1057, 1099; Mechem on Agency, secs. 284, 285, 288, p. 190. (4) The appellants knew, or at least had every opportunity of knowing, that Gardner was exceeding his authority and violating his positive instructions. The telegram containing the words, "see letter yesterday," was presented to them by Gardner. They claim they were dealing with an agent. "A person dealing with an agent must do so at his peril." Mechem on Agency, p. 190, secs. 288, 289; p. 191, sec. 290; Dozier v. Freeman, 47 Miss. 647. (5) The letter written by respondent on the twenty-first day of August, giving quotations of flour and terms of sale, and the telegram sent on the morning of the twenty-second of August calling attention to the letter and instructing Gardner to "see letter yesterday," must both be read and construed together. They were a part and a parcel of the same transaction, about the same subject-matter, between the same parties and referred to each other. 2 Parsons on Contracts [6 Ed.], marginal p. 553; Bishop on Contracts [Enlarged Ed.], sec. 382; 5 Lawson's Rights, Remedies and Practice, sec. 2315; Wallis v. Beauchamp, 15 Tex. 303; Jennings v. Todd, 118 Mo. 296, 304; Ins. Co. v. Seminary, 52 Mo. 480, 491; Noell v. Gaines, 68 Mo. 653. (6) There was no contract between the appellants and respondent. The minds of

the contracting parties never met.   5 Lawson's Rights and Remedies, sec. 2316; Mathews v. Danahy, 26 Mo. App. 660; Bent v. Alexander, 15 Mo. App. 181, 190. (7) The condition stated in the telegram was that the buyer should wait for and see the letter written the day previous.   Where there is a condition attached to an offer or acceptance there is no contract.  James & Sons v. Fruit Jar Co., 69 Mo. App. 207, 213, 216; Eads v. Carondelet, 42 Mo. 117; Eagle Mills Co. v. Caven, 1 Mo. App. Rep. No. 14, p. 537; 76 Mo. App. 458.

SMITH, J.—This action originated in the justice's court and was taken by appeal to the circuit court where it was tried before the court without a jury. After the introduction of the evidence on behalf of the plaintiffs a demurrer thereto was interposed by the defendant which was by the court sustained and judgment was given for the defendant.   Plaintiffs appeal.

On the twenty-first day of August, 1896, the plaintiffs were retail merchants, engaged in selling groceries and provisions in Brenham, Texas.   The defendant was a corporation of Missouri, engaged in manufacturing and selling flour, in the city of Marshall.   One Gardner was a broker in Brenham engaged in selling merchandise on commission, and had for several years been selling flour in his territory for defendant.   On Friday, the twenty-first day of August, 1896, the appellants applied to said Gardner for prices of flour, and on the same day, and at the plaintiffs' request, the said Gardner sent the following telegram to defendant:

STATEMENT.

"BRENHAM, TEXAS, August 21st, 1896.
"Rea & Page Milling Company,
            "Marshall, Missouri.
    "Quote Beauty for Burton, Hempstead, and Brenham.   Answer early to-morrow.    H. GARDNER.''

Immediately on receipt of said telegram, and on the same day the defendant wrote a letter to said Gardner quoting the price of Beauty flour at three dollars and *ninety-five cents* per barrel, and gave full instructions as to the sale. On Saturday, the twenty-second day of August, 1896, the defendant prepared the following telegram to send to Gardner according to his request:

"MARSHALL, MISSOURI, August 22nd, 1896.
"H. Gardner, Brenham, Texas.

"Three *ninety-five* basis Beauty cotton. *See letter yesterday.* .          REA & PAGE."

And started the said telegram to Gardner through the telegraph office. Gardner received this telegram on the same day, Saturday, August 22, 1896, but instead of quoting the price of the flour at three dollars and *ninety-five cents* per barrel, it read as follows:

"MARSHALL, MISSOURI, August 22nd, 1896.
"H. Gardner, Brenham, Texas.

"Three *twenty-five* basis Beauty cotton. *See letter yesterday.*          REA & PAGE."

Immediately upon receipt of this telegram, and without waiting for the letter as requested and instructed in the said telegram, the said Gardner took the telegram to the defendant, *showed the same to them,* and sold them a car load of flour for three dollars and *twenty-five cents* per barrel. Gardner executed and delivered to plaintiffs the following memorandum of the sale, a copy of which was mailed by him to defendant:

"BRENHAM, TEXAS, August 22, 1896.

R. & P. M. Co.

| | |
|---|---|
| 60 bbls. Our Beauty | $3 40 |
| 80–48 lb. sacks Our Beauty | 3 25 |
| 10 bbls. Jumbo | 3 10 |
| 40–48 lb. sacks Jumbo | 2 95 |
| 40–24 Jumbo | 2 95 |

"45 days or 1½ per cent Deld.          "H. GARDNER."

On Monday morning, the twenty-fourth of August,. 1896, the said Gardner received the defendant's letter, which was written on the twenty-first.    Said letter gave the price of flour at three dollars and *ninety-five* cents per barrel.    Immediately on receipt of this letter, Gardner wired defendant that he had sold the flour at three dollars and *twenty-five cents*.    The defendant, immediately, on the same day, wired Gardner that it would not fill the orders at any such figures.    Gardner immediately investigated the matter and ascertained at once that the price in the telegram should have been three dollars and *ninety-five cents* per barrel.

After ascertaining this fact, Gardner on the same day wrote a letter to the defendant referring to the sale of the flour and to the mistake in the price, and inclosing the memorandum of the sale hereinbefore set forth. At the time the sale was made flour of all grades was advancing in price at Brenham and continued to advance until after the time the flour in question ought to have been delivered, and at the time delivery should have been made, the flour contracted was worth on the Brenham market, the sum of $4.05 per barrel, and all other grades had made the same proportionate advance, so that it was impossible for plaintiff to have purchased any grade of flour without having sustained a loss.    Plaintiff testified that he finally had to buy flour, and pay $4.40 per barrel in order to supply his trade.    The plaintiffs further testified on the trial of said cause that when they bought the flour from said Gardner, the contract was that they were to have a credit of forty-five days, or one and one-half per cent off for cash, and that the flour was to be shipped in ten days.

The plaintiffs by their appeal question the propriety of the action of the trial court in sustaining the demurrer to the evidence adduced.    The defendant

insists that there was not shown in evidence any such memorandum of the sale as meets the requirements of the statute of frauds and therefore the demurrer was properly sustained. An agent is a competent witness to establish his own agency. Leete v. Bank, 115 Mo. 204; Pump Co. v. Greene, 31 Mo. App.

PRINCIPAL and agent: evidence.

269. His agency may be implied from the conduct and acquiescence of the principal. Sharp v. Knox, 48 Mo. App. 169; Cummings v. Hurd, 49 Mo. App. 139. And it may be stated as a general rule that wherever a person has held out another as his agent, authorized to act for him in a given capacity, or has knowingly and without dissent permitted such other to act as his agent in such capacity, or where his habits and course of dealing have been such as to reasonably warrant the presumption that such other was his agent, authorized to act in that capacity, whether it be a single transaction or a series of transactions, his authority to act for him in that capacity will be conclusively presumed so far as it may be necessary to protect the rights of third persons who have relied thereon in good faith and in the exercise of reasonable prudence; and he will not be permitted to deny that such other was his agent authorized to do the act he assumed to do, provided that such act is within the real or apparent scope of the presumed authority. Johnson v. Hurley, 115 Mo. 513; Rice v. Groffmann, 56 Mo. 434; Summerville v. Railway, 62 Mo. 391. And it seems well settled in the law of agency that where it appears that an agent had repeatedly performed acts like the one in question, which the principal has ratified and adopted, his authority for the performance of the disputed act may be inferred. Cummings v. Hurd, 49 Mo. App. 139 loc. cit., and cases there cited. Gardner testified that he had been acting as agent of defendant for a number of

years in making sale of the latter's flour and that his contracts as such had always been carried out by such latter. He further testified that he sold and handled the defendant's flour as a broker on commission, and that his orders were always promptly filled. One of the plaintiffs testified that he had bought flour of Gardner regularly for three or four years as agent of defendant and the contracts so made with him had always been promptly complied with by defendant. In the light of the precedents just referred to we must conclude that Gardner was the agent of the defendant authorized to make the sale of the flour to plaintiffs. The fact that Gardner was a broker selling on commission rendered him none the less an agent of defendant. Tiedeman on Sales, secs. 271, 272.

Having reached the conclusion that the evidence adduced tends to prove that Gardner was the agent of the defendant, invested with the authority to enter into the contract with the plaintiffs for the sale of the flour, we find no difficulty in reaching the further conclusion that the signing of the written memorandum thereof by Gardner himself was sufficient to meet the requirements of the statute of frauds. Such a contract may be signed for the principal by a person thereunto lawfully authorized, and though the agent sign his own name alone the principal may be still charged by parol evidence. The rule, of course, is otherwise where the agent enters into a contract in his own name under seal.

In Mechem on Agency, section 449, it is stated that the principal may be charged as such by parol evidence upon a simple contract made by his agent, even though the contract gives no indication on its face of an intention to charge any person other than the signer. And this doctrine applies to those contracts

FRAUD and perjuries: memorandum: agent's signature: parol evidence.

required to be in writing. Neaves v. Mining Co., 90 N. C. 412. The memorandum of the sale hereinbefore fully set forth contains every material part of a contract of sale that is necessary to satisfy the requirements of the statute of frauds, namely, the names of the parties, the subject-matter of the sale, and the terms and conditions of the sale. Tiedeman on Sales, sec. 76.

The defendant contends that there was no meeting of the minds of the contracting parties and therefore no contract. To this contention we can not give our assent. The meeting of minds which CONTRACTS: aggregatio mentium: secret intention: telegram v. letter. is essential to the formation of a contract is not determined by the secret intention of the parties, but by their *expressed intention*, the latter of which may be wholly at variance with the former. Brewington v. Mesker, 51 Mo. App. 348; Machine Co. v. Criswell, 58 Mo. App. 471. The defendant's agent, Gardner, telegraphed for prices on certain brands of flour which the defendant also by telegraph promptly gave him. These prices were quoted to plaintiffs who thereupon entered into the contract for the sale and delivery shown by the memorandum. The contract was entered into between the defendant acting through its agent, Gardner, on the one side and the plaintiff on the other. No essential necessary to the formation of the contract was wanting.

But it is insisted that while the defendant's telegram to Gardner quoted prices, it also directed him to "see letter of yesterday" and that therefore he was not authorized to sell until he received the letter and acquainted himself with its contents. Both Gardner and plaintiffs understood, as they might well do, that the letter referred to was but a confirmation of the prices quoted in the telegram. There was no direction

not to sell until the receipt of the letter. Gardner was not required by the terms of the telegram to wait for the letter before making sale at the prices therein quoted. Why quote prices if Gardner was not to use the same in soliciting orders at the three places named in his telegram? If the defendant had intended that Gardner should not quote prices to parties desiring to purchase, until it could communicate the same to him by letter, why did it telegraph prices in advance of the letter? Defendant knew from Gardner's telegram that his request for quotations was urgent or else it would not have so promptly complied by telegraphing back the desired quotations. If he was not to act on the quotations why were they given in advance of the letter and without reservation?

Had it not been for the negligence of the telegraph company in failing to correctly transmit the defendant's message as to prices this controversy would never have arisen. The question now is, who shall suffer for the negligence of the telegraph company; the defendant who was in privity with it or the plaintiffs who sustained no such relation? The rule is that where one makes an offer by telegraph he thereby makes the telegraph company his agent for its transmission, and if it is altered in the transmission he is bound by it as transmitted. Bishop on Contracts, art. 328. So far as the plaintiffs were concerned the quotations which Gardner received and requoted to the plaintiffs are to be taken as if there had been no error in the transmission of the same. These quotations must be regarded as those of the defendant, and when the plaintiffs agreed to purchase of the former's agent at the prices so quoted, as evidenced by the memorandum thereof reduced to writing, this was, in legal effect, a complete

—: two innocent parties: agency of telegraph company.

meeting of minds. The error in the transmission becomes unimportant,

Gardner offered and sold the plaintiffs the flour in accordance with the authority conferred upon him by the telegram of the defendant. He acted within the scope of that authority in making the sale to the plaintiffs. The plaintiffs appear to have purchased in good faith and are not to be affected by the communications had prior thereto between the defendant and its agent. It seems to us that the plaintiffs made out a *prima facia* case entitling them to a submission, and therefore the action of the court in sustaining the demurrer to the evidence was such an error as requires a reversal of the judgment, which is ordered accordingly. All concur.