ALFRED KURANER, APPELLANT, v. COLUMBIA NATIONAL BANK OF KANSAS CITY, RESPONDENT.—90 S. W. (2d) 465.

Kansas City Court of Appeals. January 27, 1936.

*McVey, Randolph, Smithson & Garrity* for appellant.

*Henry S. Conrad, L. E. Durham, Hale Houts* and *Wright Conrad* for respondent.

REYNOLDS, C.—This is a suit by the plaintiff as assignee of Mc-Vey, Freet & Randolph, formerly a firm of practicing lawyers in Kansas City, Missouri, against the Columbia National Bank, a banking corporation in Kansas City, Missouri, as defendant, to recover the sum of $580 alleged to have been wrongfully paid by said bank, on a check drawn by said law firm against the checking account or deposit kept by said firm with said bank, to another person and for another purpose than as originally directed by said check, by which payment said firm's funds in said bank were diverted to said firm's loss in the amount of said check.

The nature of plaintiff's claim and the grounds on which it is based and his theory of recovery fully appear from the second

amended petition, upon which the cause was tried in the court below, which petition, omitting caption and signatures, is as follows:

"Comes now the plaintiff and for cause of action states:

"1. That the defendant, Columbia National Bank, is a corporation organized under the laws of the United States and doing a general banking business, in Kansas City, Missouri, including checking accounts, receiving deposits, and paying of checks thereon.

"2. Plaintiff states that E. H. McVey and C. A. Randolph were in the month of August, 1933, co-partners practicing law under the firm name 'McVey, Freet & Randolph' in Kansas City, Missouri; that said firm carried a checking account in the defendant, Columbia National Bank, and on or about August 19, 1933, issued check numbered 2426 to the order of the defendant, Columbia National Bank, in the sum of five hundred eighty ($580) dollars. Plaintiff further states that there was written on the check the following: 'to buy cashier's check (or draft) payable to Dr. McMillen.' Plaintiff further states that the said writing on said check was fraudulently altered by a stranger thereto by erasing the said writing and by writing in its place the following: 'Partial payment to Dr. H. B. McMillen.' Plaintiff states that said check was presented to said bank by a stranger thereto with the aforesaid alteration clearly appearing upon the face of said check; that notwithstanding such alteration the defendant, Columbia National Bank, issued its cashier's check to other persons and for other purposes than as originally directed thereon, namely, to the order of one L. C. Herwig, said funds being thereby diverted, to the loss of the said McVey, Freet & Randolph in the amount of the check, to-wit, five hundred eighty ($580) dollars, whereby the defendant, Columbia National Bank, is indebted to this plaintiff in the sum of five hundred eighty ($580) dollars with interest at six per cent from August 19, 1933.

"3. Plaintiff states that by duly executed assignment he is the owner of all right, title, and interest of said McVey, Freet & Randolph in and to the cause of action herein set forth.

"Wherefore, plaintiff prays judgment against the defendant in the sum of five hundred eighty ($580) dollars with interest at six per cent from August 19, 1933, together with costs."

The defendant answered by way of general denial.

Upon a trial had before the court and a jury, the court, at the close of plaintiff's evidence, granted to defendant an instruction in the nature of a demurrer peremptorily directing a verdict in favor of the defendant and marked such instruction, "Given," when the plaintiff thereupon took an involuntary nonsuit with leave to move to set the same aside; and the jury was discharged.

Thereafter, within due time, the plaintiff filed a motion to set aside the involuntary nonsuit taken by him and to grant a new trial. Upon the submission of such motion to the court, it was by

the court overruled; and, from such action by the court in refusing to set aside the involuntary nonsuit and to grant plaintiff a new trial, the plaintiff prosecutes this appeal.

The facts as developed from the evidence in the record appear to be that McVey, Freet & Randolph were copartners in the practice of law in Kansas City, Missouri, during the year 1933 and during such year carried a checking and deposit account with the defendant, Columbia National Bank, and that, on August 19, 1933, the firm issued its checks against its account payable to the order of the defendant, Columbia National Bank, for the sum of $580, upon the upper margin of which check and just above the name of the payee appeared in writing the words, "to buy cashier's check (or draft) payable to Dr. McMillen." The check also bore in the upper margin thereof the written memorandum, "McMillen v. Nicholson Cashier's check." It appears that the check with the written memorandum thereon of "McMillen v. Nicholson Cashier's check" was prepared by one Mrs. Onsen, in the employ of the firm as bookkeeper, cashier, and stenographer, in her own handwriting and presented by her to C. A. Randolph, one of the members of the firm, for the signature of the firm thereto by him. At the time the same was so presented to him, he wrote the words thereon appearing in the upper margin above the name of the defendant bank as payee "to buy cashier's check (or draft) payable to Dr. McMillen" and signed the firm name thereto by him and delivered the check back to Mrs. Onsen to take to the bank and procure the cashier's check to be forwarded by her to Dr. McMillen. It would appear that the firm had represented Dr. McMillen in some matter of litigation he had with one Nicholson; that such litigation had been settled; and that there was due Dr. McMillen from the firm, from the proceeds of such settlement, the sum of $580, the amount of the check.

After the check left Mr. Randolph's hands, it appears that the words "to buy cashier's check (or draft) payable to Dr. McMillen," written on the upper margin thereof by Mr. Randolph at the time he affixed the signature of the firm thereto, were erased by Mrs. Onsen and the words "Partial Settlement to Dr. H. B. McMillen" written thereon by her at the same place where the words written by Mr. Randolph had appeared. The latter words, "Partial Settlement to Dr. H. B. McMillen," appear in the handwriting of Mrs. Onsen and were, presumably, written by her. The check was presented to the defendant bank by Mrs. Onsen on August 19, 1933; and the account of McVey, Freet & Randolph was charged by the bank with the amount thereof; and, upon the direction of Mrs. Onsen, a cashier's check was issued in payment thereof to one L. C. Herwig, which cashier's check was in due course, upon presentation duly endorsed by L. C. Herwig and his endorsees, paid to the endorsees of the said Herwig by the defendant bank.

It appears that Mrs. Onsen had been in the employ of the firm of McVey, Freet & Randolph for a number of years prior to the issuance of the check in question in the capacities of stenographer, clerk, bookkeeper, and cashier, and, in such capacities, had handled the banking business of the firm. She made deposits in the bank to the credit of the firm's account. She collected the cancelled checks and exercised general supervision over the firm's bank accounts. She purchased cashier's checks for the firm. Practically all checks were drawn by her and appeared in her handwriting except the signatures thereto, which were made and appeared in the handwriting of some member of the firm to whom she presented the same for signature. Notations on the margins of the checks were ordinarily made by her and appeared in her handwriting; and it was intended by the firm that the bank accept and honor such checks so drawn up by her and appearing in her handwriting, with or without notations thereon, when signed by the firm; and the bank had uniformly accepted all such checks so drawn up by her, appearing in her handwriting, when the signature of the firm was affixed thereto by some member thereof, with or without notations thereon. She had authority to make and frequently did make notations in the margins of the checks, even for her own benefit. She had authority to present to the bank for payment any check with the signature of the firm thereto which appeared to be drawn up by her and to be in her handwriting, with or without memorandums and notations thereon in her own handwriting or in the handwriting of other parties. She had authority in the presentation of a check to the bank to receive the cash thereon or to direct the issuance of a cashier's check or draft in payment thereof and the payee to whom the same should be issued or to give other directions with respect thereto. A great number of checks were thus handled for the firm by her each year. She handled the cash coming in for the firm, made up deposit slips, deposited the cash in the bank, and otherwise exercised control over such cash and had authority when occasion arose to purchase cashier's checks with it.

The petition charges that the check when presented to the defendant bank was presented by a stranger thereto with the erasure and the alterations thereon clearly appearing. However, it does not appear from the evidence in just what condition the check was with respect to any erasure or alteration appearing upon the margin thereof, if any, at the time of its presentation to the bank and the issuance of the cashier's check to L. C. Herwig, other than it may appear from the testimony of Mr. Randolph as a witness in an admission by him that, upon discovery of the erasure and alterations upon the margin of the check some time after it had been presented to the bank, he made a claim for his firm against the bank with respect to the amount of such check, in support of which he furnished

the bank an affidavit containing the statement that Mrs. Onsen had, in a conversation with him, stated that she had made the changes on the check and had got the money thereon and that she had stated to him that she took the check to the defendant bank and directed the issuance of the cashier's check thereon by the bank payable to the order of L. C. Herwig and had delivered such cashier's check to him in settlement of some personal obligation of her own. It was further testified by Mr. Randolph on the trial that Mrs. Onsen had made such statements to him.

Neither Mrs. Onsen nor the clerk or officer of the defendant bank to whom the check was presented was introduced as a witness on the trial. Mr. Randolph, who testified on the trial for the plaintiff, had no personal knowledge as to when the alteration or the erasure on the check was made or whether such erasure and alteration appeared on such check at the time it was presented at the bank or not. After he signed it and handed it back to Mrs. Onsen to be taken to the bank, he did not see it again until September, after it had been presented to the bank and cancelled and returned to his firm.

Mr. Thornton Cooke, who testified for the defendant bank, had no personal knowledge of the condition of the check at the time that it came into and was presented to the bank or of the representative of the bank who handled the check for the bank when presented or of any orders given by McVey, Freet & Randolph or its representative with respect to the proceeds thereof. He merely identified records of the bank which, upon being introduced in evidence, showed the presentation of the check on August 19, 1933, its charge against the account of McVey, Freet & Randolph, and the issuance of the cashier's check payable to the order of L. C. Herwig in the amount thereof on the order of McVey, Freet & Randolph.

Randolph and Cooke were the only witnesses on the trial other than the plaintiff, Kuraner. Kuraner merely testified to the assignment to him by the firm of McVey, Freet & Randolph of its claim against the defendant bank for the purposes of this suit.

## OPINION.

1. Plaintiff complains of the action of the trial court both in giving defendant's instruction at the close of plaintiff's case directing a verdict for defendant and in overruling plaintiff's motion to set aside the involuntary nonsuit and to grant a new trial as erroneous and bases his complaint in respect to such action by the court on the following grounds: That the original check drawn by McVey, Freet & Randolph (plaintiff's assignor) on defendant bank payable to the order of defendant bank directed the remittance of the amount thereof by defendant bank as its agent to Dr. McMillen by a cashier's check or draft payable to him; that such original check, at the time of its presentation to the bank, had, by erasure of written directions

thereon and written additions thereto, been so altered as to cause it to speak a language in legal effect different from that which it originally spoke so that it no longer was the authentic check or order of the firm and, when paid by defendant bank in its altered form to another party than as directed by it originally, it was paid to the wrong party and the bank could not charge the amount thereof against said firm's deposit with it, but was itself required to sustain any loss occasioned by such payment.

The defendant concedes the legal proposition that the original check payable to the defendant bank when presented to the bank changed the relationship between defendant bank and the firm in respect to the amount of the check, from that of debtor and creditor to that of agent and principal, but asserts that, in cashing the check, the defendant acted in accordance with the orders of the firm, its depositor; that, in issuing its cashier's check thereon and afterward paying it, it followed the direction of the duly authorized agent of the firm, acting within the apparent scope of her authority without actual or constructive notice upon defendant's part of any lack of authority or of any intention to defraud upon her part; that, insofar as any alteration or forgery was involved, if any, such was an alteration or forgery for which the firm was solely responsible, so far as concerned the defendant bank.

It is true, as contended by the plaintiff, that a depositor's banker can make charges against the depositor's account only on an authentic order of the depositor; but whether, in this case, the cashier's check issued by defendant bank upon the check presented to it in its altered form was issued upon the authentic order of McVey, Freet & Randolph, the depositor, depends upon whether Mrs. Onsen, at whose direction the bank issued such cashier's check, was the duly authorized agent of said firm acting within the apparent scope of her authority without any actual or constructive notice upon the part of the bank of lack of authority upon her part, if any, to give such direction and without notice upon the bank's part of any intention on her part to defraud when she gave the direction for the issuance of such cashier's check.

The facts with respect to the real and apparent authority of Mrs. Onsen, as gathered from the record, have been fully set out in the statement herein, as have also the facts with respect to the condition of the check and the notations thereon at the time it was presented to the defendant bank by Mrs. Onsen and acted on by such bank. It is unnecessary to set out such facts again. When the check was presented to the defendant bank by Mrs. Onsen, the notation thereon made by Mr. Randolph, a member of the firm of McVey, Freet & Randolph, plaintiff's assignor, at the time he signed the firm's name thereto—"to buy cashier's check (or draft) payable to Dr. McMillen" —had been erased by Mrs. Onsen; and the check was entirely in

Mrs. Onsen's handwriting, except for the signature. It, at such time, bore the notation in the handwriting of Mrs. Onsen—"Mc-Millen v. Nicholson Cashier's check." Whether the notation "Partial Settlement to Dr. H. B. McMillen" made thereon by Mrs. Onsen (at the place where the notation made by Mr. Randolph—"to buy cashier's check (or draft) payable to Dr. McMillen"—had appeared and had been erased) appeared thereon at such time is not shown by the evidence, other than as it may appear from the testimony of Mr. Randolph, a member of the firm of plaintiff's assignor, when a witness, in an admission by him that, upon the discovery of the erasure and alteration in the margin of the check after the check had been presented to the bank and its cashier's check issued thereon and after such check had been charged to the firm's account in the bank and cancelled and returned to the firm by the bank, he made a claim for the firm against the bank for the amount of such check, in support of which he furnished the bank an affidavit containing the statement that Mrs. Onsen had, in conversation with him, stated that she had made the changes in the check and got the money thereon. It was also stated by such witness in another connection that he understood such notation was written by Mrs. Onsen on such check afterward (that is, written thereon after it had been presented to the defendant bank). It is not material in our opinion whether such latter notation was thereon at the time it was presented or not. It was not such a notation that furnished any information to the bank of which it was required to take any notice. [7 C. J., p. 674, art. 389.]

2. It is unnecessary to consider whether the defendant bank would have been bound or put on notice by Mr. Randolph's notation on the upper margin of the check had it been there when the check was presented to the defendant bank or whether such notation, in fact, was a direction to the defendant bank as to the disposition of the proceeds of such check. Plaintiff is bound by the allegation of his petition that such notation had been erased when the check was presented to the defendant bank. [Steinberg v. Merchants' Bank, 334 Mo. 297, 305, 67 S. W. (2d) 63, and cases cited therein.] Moreover, there was evidence to the effect that such notation had, at such time, been erased.

3. Nor was the defendant bank bound to take any notice of any erasure or alteration in any notation appearing upon the margin of the check or of any notation made thereon for the convenience of the makers of the check or other person; and, moreover, any alteration appearing thereon made by Mrs. Onsen was one for which the firm, plaintiff's assignor, was responsible so far as the defendant bank was concerned. [2 C. J., pp. 1223, 1237 et seq.] It seems to be the well-settled law that the bank is not required to take notice of any notation or memorandum on the check appearing on

the margin thereof made for the convenience or benefit of the maker of such check with respect to the honoring of such check or so as to restrict the bank's right to charge the maker's account with the amount thereof. [7 C. J., p. 674, art. 389; 5 Michie on Banks and Banking, 1931, pp. 122, 325; R. S. Howard Co. v. International Bank of St. Louis, 198 Mo. App. 284, 200 S. W. 91; Morgan v. Mulcahey (Mo. App.), 298 S. W. 242; State Nat. Bank of Springfield v. Dodge, 124 U. S. 333; Childs v. Empire Trust Co. (C. C. A. 2), 54 Fed. (2d) 981.]

There was no alteration of any part of the check proper. A check may ordinarily be defined to be an order by the maker thereof on a bank or banking house for the payment from the account of the maker of a certain sum of money to a certain person therein named as payee or to him or his order or to bearer and payable instantly on demand. [7 C. J., p. 673, art. 383; State v. Vincent, 91 Mo. 662, 4 S. W. 430; Kavanaugh v. Farmers' Bank of Maitland, 59 Mo. App. 540.] It, in general effect, is merely a draft or an inland bill of exchange. The original check in this case, as drawn, amounted to an order on the defendant bank to charge the firm's account with the amount thereof and to hold the amount represented thereby as the agent of the firm subject to the firm's direction. Likewise, the check, when presented in its altered condition upon the margin thereof, was an order on the defendant bank to charge the firm's account with the amount thereof and to hold the amount of cash represented thereby as the agent of the firm, subject to the firm's directions as to its disposition, either as such disposition appeared to be noted on the margin of the check or as such disposition might be otherwise (upon or after the cashing of such check) directed by the firm personally or through its authorized agents. The giving of such directions was clearly within the scope of the apparent authority of Mrs. Onsen as the cashier and banking agent of the firm, with which she had been clothed as such agent by the firm. There was no alteration of any character on the body of the check or the margin thereof at the time that it was presented to the defendant bank with which it was chargeable. The defendant bank applied the funds received upon (or represented by the amount of) such check in accordance with the directions of Mrs. Onsen, the firm's agent, in the payment of a cashier's check which it had issued in the manner directed by the firm through her, its cashier and banking agent; and, in so doing, it fully discharged its obligation to the firm as its depositor and as the maker of the original check. Neither the erasure nor any notation that might have been added thereto and that might have appeared on the margin of the check could have any significance to the defendant bank. They were not on any part of the check proper. The body of the check remained intact as originally drawn. The erasure was not on any part of the check on which direction as

to the payment thereof or as to whom the payment of the proceeds should be made would ordinarily be expected to appear, but on a part only where notations and memorandums for the benefit of the maker—of which the bank was not required to take notice—ordinarily appear; and it was therefore of no importance to the bank. The direction as to the payment of the check was in the body of the check; and that direction was to the bank to pay the amount of such check to itself as payee, subject to the direction of the firm or its agent, duly authorized, as to the disposition of such proceeds.

That the defendant bank was as a matter of law clearly entitled to rely on the apparent authority of Mrs. Onsen in the premises (as the firm's cashier and banking agent) to give the directions with respect to the issuance of its cashier's check and was fully justified in following her directions in such regard in its payment, we have no doubt. [Griffin v. National Bank of Commerce (Mo.), 246 S. W. 180; New York Indemnity Co. v. Andrew County Bank, 227 Mo. App. 878, 59 S. W. (2d) 741; Union House Furnishing Co. v. National Bank of Commerce (Mo. App.), 53 S. W. (2d) 1067; Indemnity Mut. Marine Assur. Co. v. Powell & O'Rourke Grain Co., 216 Mo. App. 673, 271 S. W. 538; First National Bank v. City National Bank, 102 Mo. App. 357, 76 S. W. 489.]

In the case of Haubelt Bros. v. Rea & Page Mill Co., 77 Mo. App. 672, l. c. 679, it was said by this court: "And it may be stated as a general rule that wherever a person has held out another as his agent, authorized to act for him in a given capacity, or has knowingly and without dissent permitted such other to act as his agent in such capacity, or where his habits and course of dealing have been such as to reasonable warrant the presumption that such other was his agent, authorized to act in that capacity, whether it be a single transaction or a series of transactions, his authority to act for him in that capacity will be conclusively presumed so far as it may be necessary to protect the rights of third persons who have relied thereon in good faith and in the exercise of reasonable prudence; and he will not be permitted to deny that such other was his agent authorized to do the act he was assumed to do, provided that such agent is within the real or apparent scope of the presumed authority. [Johnson v. Hurley, 115 Mo. 513; Rice v. Groffmann, 56 Mo. 434; Summerville v. Railway, 62 Mo. 391.] And it seems well settled in the law of agency that where it appears that an agent had repeatedly performed acts like the one in question, which the principal has ratified and adopted, his authority for the performance of the disputed act may be inferred."

In the case at bar, Mrs. Onsen had both real and apparent authority with respect to the handling of the check in question and the direction of the issuance of the cashier's check which was issued by the defendant bank in payment thereof. As revealed by the evidence

in the record, she had been doing the business of the firm and had drawn its checks for a number of years; she was bookkeeper, cashier, and banking clerk; she attended to the making of practically all deposits; she drew up practically all of the checks; she had authority to make notations on checks for the firm and to make notations thereon for her own convenience, and it was intended by the firm that the bank should pay all of the checks drawn up by her, appearing in her handwriting with or without notations, subject only to the signature of the firm by some member thereof; she had authority to present checks for the firm to the bank for payment and to receive the cash thereon and to buy cashier's checks or otherwise to direct the disposition of the proceeds of such checks so presented and collected; she had authority to deposit checks; she had authority over the firm's cash to deposit it in the bank or to buy cashier's checks with it or to direct otherwise the disposition thereof. She had done all of these things with the defendant bank in behalf of the firm for two years and over, with full knowledge on the part of the firm. Her apparent authority was such as even to have included the endorsement and cashing of checks for the firm.

Thus, with Mrs. Onsen having authority to draw checks (except as to signatures) and to make notations thereon, it was not beyond the scope of her apparent authority, so far as her dealings with the defendant bank were concerned, to erase notations thereon and make others in their stead or, without making others in their stead, merely to erase them.

Where a principal clothes his agent with apparent authority in certain capacities, he is bound by all of the acts of such agent within the scope of such authority. [Haubelt Bros. v. Rea & Page Mill Co., supra.] That Mrs. Onsen's authority may have been restricted in any particular within the scope thereof, if so, is immaterial so far as the defendant bank is concerned, unless it had notice of such restriction. Mrs. Onsen was, in fact, at least apparently if not really, clothed with general authority with respect to the drawing and cashing of checks and the making of notations thereon and with respect to the disposition of cash received on checks and otherwise by investment in cashier's checks and for other purposes, in her discretion; and it nowhere appears that the defendant bank had notice of any restrictions whatever, if any in fact existed, upon her authority in such regard.

4. Any questions of forgery or alteration of the check between the firm's assignee and the defendant bank are eliminated by reason of the apparent authority of Mrs. Onsen with respect to the drawing of the firm's checks, the making of notations thereon, the presentation of the same to the bank, the cashing of the same, the direction of the disposition of the proceeds of such checks when cashed, including the purchase with such proceeds of cashier's checks as noted,

and by reason of the further fact that, on presentation of the check in question to the defendant bank, the relationship between the firm and the bank with respect to such check was no longer that of creditor and debtor but that of principal and agent with respect to the disposition of the proceeds thereof. Such questions remain questions solely between the firm and its cashier and banking agent, Mrs. Onsen. The check when presented had already been erased upon the margin thereof by the firm's agent, in whose possession it was; and such erasure, so appearing thereon, was, upon the facts in the record, the act of the firm and one for which the firm was responsible so far as the bank was concerned. Likewise, any other alterations or additions which might have appeared thereon at such time were alterations or additions made thereon by the firm's agent presenting it and were, upon the facts in the record, the acts of the firm for which the firm was liable so far as the bank was concerned. [2 C. J., pp. 1223, 1237 et seq., supra.] Of course, the bank could not be concerned or affected by any alterations or additions made thereon by the firm's agent after the check was paid or returned to the bank.

The facts in this case bring into play the doctrine that, where one of two innocent persons must suffer by the acts of a third person, he who has enabled such third person to occasion the loss must sustain it. [New York Indemnity Co. v. Andrew County Bank, supra.] Measured by such doctrine, the loss occasioned by the acts of Mrs. Onsen must be borne by plaintiff's assignor and cannot by it or its assignee, the plaintiff, be shifted to the defendant bank.

5. The plaintiff makes a further assignment of error with respect to the action of the trial court in sustaining the objection to an offer of proof made by plaintiff with respect to the practice and custom of the defendant bank of refusing checks upon which erasures appear and with respect to its practice of honoring specific directions written on checks presented to it for payment. However, such assignment of error does not appear to be carried forward and insisted upon in the brief. Such assignment is, therefore, under the rule applicable in such instances, to be regarded as abandoned. [Miller v. Mut. Ben. Health & Accident Ass'n (Mo. App.), 80 S. W. (2d) 201, and cases therein cited; Pence v. Kansas City Laundry Service Co., 332 Mo. 930, 59 S. W. (2d) 633.]

It follows from what has been said that the action of the trial court in granting the defendant's peremptory instruction at the close of plaintiff's case and in refusing to set aside the nonsuit taken by plaintiff and to grant new trial was proper. The judgment of the trial court should be and is affirmed. Campbell, C., concurs.

PER CURIAM:—The foregoing opinion of REYNOLDS, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.