WILLIAM W. MARTIN, WILLIAM S. BEDAL and GEORGE F. HARDIE, Trustees, Respondents, v. FIRST NATIONAL BANK IN ST. LOUIS, a Corporation, Appellant.—No. 40858.—219 S. W. (2d) 312.

Division One, April 11, 1949.

1200

*Thomas S. McPheeters* and *Bryan, Cave, McPheeters & McRoberts* for appellant.

*Lashly, Lashly, Miller & Clifford, Jacob M. Lashly, Arthur V. Lashly* and *R. Forder Buckley* for respondents.

1202

[314] DALTON, C.—Action to recover the amounts evidenced by three checks drawn on and payable to defendant bank. It is charged that the checks were paid and charged against plaintiffs' account and the proceeds thereof disposed of without plaintiffs' authority or consent. Verdict and judgment were for plaintiffs for $8084.88 (including interest) and defendant has appealed. Error is assigned on the giving and refusal of instructions and the exclusion of evidence.

Plaintiffs are co-trustees of an express trust and, since March 31, 1932, have constituted the Bondholders' Protective Committee representing the holders of bonds issued or assumed by the St. Louis Joint Stock Land Bank of St. Louis. These bonds were deposited with the Committee and certificates of deposit were issued therefor. On April 1, 1932, the Committee appointed and employed William H. Humphrey as secretary, and his employment included the services and facilities of Humphrey, Jacques and Company, a corporation (hereinafter referred to as the corporation), whose business consisted of handling accounts, including the bank accounts of some fifty bondholders protective committees. At that time the corporation had in its employment a bookkeeper named Robert H. Torrence and his duty was "to work on" the books and records of the committees whose accounts the corporation was handling, including the books, records and accounts of plaintiffs. Humphrey was a stock-

holder and employee of the corporation and the immediate superior of Torrence. As secretary, a regular salary was paid to Humphrey from 1933 until January 1940, but at his direction all checks for secretarial fees and expenses were made payable directly to the corporation. Torrence worked for the corporation from March 1930 until the latter part of 1939, when the corporation ceased doing business. Thereafter, until about July 24, 1942, Torrence continued to keep the books and records of the plaintiffs at the direction and on behalf of Humphrey.

Plaintiffs had two checking accounts with defendant bank and Torrence handled the making of all deposits in these accounts, kept a record of all the committee's receipts and disbursements, prepared the data for some five dividend distributions and drafted the check forms therefor to some 3000 holders of deposit certificates for stock. He not only transacted all the business of the committee with defendant bank but, throughout the entire period from 1932 to July 1942, he received the monthly statements and cancelled checks of the committee from the defendant bank, examined them and checked the cancelled checks against the monthly statements. No one else gave these matters any attention whatsoever and there were no inquiries, audits, or investigations. During this period Torrence appropriated some $17,000 of plaintiffs' funds to his own use.

Other facts appear from plaintiffs' instruction 1, as follows: ''. . . it is admitted that plaintiffs opened and maintained a checking account in defendant bank, which was denominated as a dividend account, subject to be paid out only on checks drawn in the name of Bondholders' Protective Committee . . . signed by William R. Humphrey as Secretary, and countersigned by either William W. Martin or Davis Biggs, then members of said Committee; that it is admitted that on or about February 1, 1941, August 14, 1941, and April 15, 1942, respectively, one R. H. Torrence presented to defendant bank checks, plaintiffs' Exhibit 'E', 'J' and 'H', drawn on said dividend account, bearing the genuine signatures of W. W. Martin and Wm. R. Humphrey on behalf of said Bondholders' Protective Committee as drawers thereof, payable to defendant bank; that it is admitted that defendant bank issued and delivered to said Torrence, cashier's checks equal in amount to the checks so presented to it, payable either to the said Torrence or to the Mutual Bank & Trust Company, and charged against plaintiffs' said dividend account the total amount of said checks; that it is admitted the said Torrence thereafter wrongfully appropriated the proceeds thereof to his own use; that it is admitted that on October 22, 1942, plaintiffs made demand upon defendant bank for the payment [315] of the amounts specified in each of said checks . . . that it is admitted that the plaintiffs were not at the times herein mentioned, and are not now, indebted to defendant bank and *unless you find from the evidence*

*that defendant bank had authority emanating from plaintiffs to issue
and deliver the aforementioned cashier's checks to the said Torrence
for the said checks presented to defendant bank by the said Torrence,
your verdict will be for the plaintiff on Counts Three, Four and Five
of the Petition; . . . "* (Italics ours).

It is admitted that Torrence had no actual authority from the committee to obtain the cashier's checks or to receive the funds evidenced by the checks presented. Plaintiffs owed Torrence nothing and did not authorized the checks to be made payable to the bank; nor otherwise authorized the bank to issue the cashier's checks. Torrence was never an employee of the committee, although on September 6, 1940, the committee paid him for services rendered to Humphrey. Defendant contends only that Torrence did work for the committee, not that he was a regular employee.

The committee had no office and no telephone was listed in its name. The signature cards furnished defendant showed only the address in the Railway Exchange Building where the corporation maintained an office. The books, records and papers of the committee were kept in the corporation office. After the corporation went out of business, Torrence rented the same office and the books, papers and records of the committee remained therein.

No stubs were kept of checks issued on the dividend account, but a record was kept on columnar paper. On account of prior sales and transfers of stock evidenced by the certificates of deposit of stock, it was not unusual for new dividend checks to be required in lieu of some checks issued. Defendant's evidence tended to show that a supply of checks signed in blank by the Chairman of the Committee (Martin) were kept on hand at all times and that Humphrey also signed checks in blank. On one occasion, before leaving for Colorado, Martin had signed some fifteen or twenty such checks in blank and left them with Humphrey. They were placed in the corporation safe, accessible to the employees and in the room where Torrence worked.

No further inquiry was made by Martin as to the disposition of these checks. All checks in question here were signed in blank by both Martin and Humphrey. Torrence filled in three of these checks, made them payable to himself, cashed them at defendant's bank and appropriated the money, as follows: August 3, 1939, $150.00; September 19, 1939, $5,115.00; and November 16, 1940, $4,500.00. At the end of the respective months, Torrence "picked up" the cancelled checks and the statements showing these checks charged against plaintiffs' account, returned them to the corporation office, examined them for Mr. Humphrey and placed them with the other records and papers of the committee. Each of the monthly statements of credits and disbursements to plaintiffs' account showed the following: "Please examine at once. If no error is reported within ten days, the account

will be considered correct. Please report any difference in this statement to the auditor." No complaints or objections were made.

Thereafter, Torrence filled in the blanks on the three checks involved in this suit, as follows: February 1, 1941, $2,318.73; August 14, 1941, $1,611.48; and April 15, 1942, $2,287.42. Each of these checks were made payable to the defendant bank. Torrence presented the checks, on the respective dates, to exchange tellers of defendant whom he knew by sight. So far as he knew they did not know his name. He requested the issuance of cashier's checks, the first two to R. H. Torrence and the last to the Mutual Bank and Trust Company. Torrence had been having contacts with the exchange tellers with regard to purchasing cashier's checks for other committees represented by the corporation since 1930, but apparently he had purchased only one such cashier's check for the plaintiffs. Torrence cashed and appropriated the funds evidenced by the several cashier's checks. Thereafter, at the end of the respective months, Torrence received defendant's monthly statments showing the checks charged against plaintiffs' account during the said months, together with the cancelled checks. One of these statements showed [316] only nine charges, one four, and one three, including the checks in question. The checks were not dated on a dividend paying date. Although Torrence checked the cancelled checks against the statements, he made no report to anyone. No one else made any examination of the several statements, although plaintiffs knew that defendant customarily rendered such statements.

On December 2, 1940, prior to the presentation of the checks in question, Torrence had presented a valid check of the committee, payable to defendant bank, and had purchased a $1,500.00 cashier's check payable to James J. O'Connor, Clerk of the U. S. District Court. Defendant's exchange teller, who issued the $1,611.48 cashier's check on August 14, 1941, payable to R. H. Torrence, did not know the person requesting the check was Torrence, but knew the same person had presented a similar check of plaintiffs' and had purchased the cashier's check to Mr. O'Connor. Neither of the exchange tellers, who accepted the checks involved here and issued the cashier's checks, knew Torrence by name, but they did know him by sight and knew he was a person who had been making deposits in plaintiffs' account with the defendant. The respective tellers found the signatures correct on the several checks presented and the account adequate, but made no other investigation.

 Appellant assigns error on the giving of Instruction No. 1, supra, because it "undertook to cover the whole case and in effect to direct a verdict for respondents"; because it "entirely ignored the question of apparent authority"; and, because it was in direct and irreconcilable conflict with Instruction No. 2 submitting a defense based "upon Torrence's apparent authority." Instruction No.

2, after a brief statement of the applicable rule of law, advised the jury "that if you find from the evidence that R. H. Torrence made deposits and handled substantially all of the banking business that the Committee had with defendant Bank, and that on at least one occasion he presented to the Bank a check drawn to the order of said Bank and obtained therefor a cashier's check to the order of James J. O'Connor, Clerk of the United States District Court, and if you find from the evidence that the effect of such transactions was to cause the Bank to believe that Torrence was acting within the limitations of his authority in presenting other checks to the Bank and obtaining cashier's checks therefor, then you are further instructed that if you find and believe from the evidence that the Bank was without negligence, as elsewhere defined in these instructions, in issuing the cashier's checks here involved, your verdict should be for the defendant on all three counts of plaintiffs' petition."

Respondents insist (1) that "Instruction No. 1, supra, does not require a verdict for the respondents unless they found from the evidence that appellant bank had *actual* authority emanating from respondents to issue and deliver its cashier's checks to Torrence"; and (2) that Instruction No. 2 is not in conflict with Instruction No. 1, since Instruction No. 2 merely "elucidates the general term 'authority' " and the "somewhat too general statement in Instruction No. 1." Respondents further say that instructions to juries "must be read and interpreted together, and, as a whole"; that plaintiffs' instruction is to be read "in connection with defendant's instruction"; and that any error is cured by Instruction No. 2.

Instruction No. 1 covered the entire case, provided for no exceptions whatsoever, and directed a verdict for plaintiffs "unless . . . defendant bank had authority emanating from plaintiffs." It wholly ignored the pleaded affirmative defense of "apparent authority" and directed a verdict without reference thereto. Respondents argue that appellant erroneously assumes that the word "authority" as used in the instruction means "actual authority." Instruction No. 1 does not use the words "actual authority," or "authority in fact," but such was the sole and only issue submitted by the instruction. Since there was no evidence that Torrence had authority to request and secure the cashier's checks or the proceeds of the checks presented, appellant had no "authority emanating from plaintiffs" to issue and deliver them to Torrence. The instruction in effect directed a verdict for plaintiffs.

[317] Plaintiffs were entitled to a verdict, unless one of the pleaded affirmative defenses was made out. Instruction No. 2, submitted as a complete defense matters wholly independent of the matter of actual authority, or authority in fact, towit, authority by an estoppel. The instruction was not concerned with the matter of authority, actual or in fact, but authorized a verdict regardless thereof. It told the

jury that if they found the facts submitted therein, such facts constituted a full and complete defense to plaintiffs' action and required a verdict for defendant. We think the two instructions were in direct and irreconcilable conflict. Nagy v. St. Louis Car Co. (Mo. Sup.), 37 S. W. (2d) 513, 515; Bouligny v. Metropolitan Life Ins. Co. (Mo. App.), 133 S. W. (2d) 1094, 1097; Usona Mfg. Co. v. Shubert-Christy Corp. (Mo. App.), 132 S. W. (2d) 1101; Mutual Life of Illinois v. McKinnis (Mo. App.), 47 S. W. (2d) 564; Roland v. Gassman (Mo. App.), 44 S. W. (2d) 658, 661; Bowen v. Epperson, 136 Mo. App. 571, 575, 118 S. W. 528; Berryman v. Cox, 73 Mo. App. 67, 72.

Respondents, however, say that the error, if any, ·in giving Instruction No. 1 was harmless, since verdicts should have been directed for plaintiffs. If Instruction No. 2 submitted a valid defense, the motions for directed verdicts were properly ruled. No question is raised concerning the pleadings, but respondents question the sufficiency of the evidence to sustain the defense submitted. Respondents insist that the uncontroverted evidence shows the bank itself was at fault or guilty of negligence in paying the checks of a depositor to another than the payee without authority of the drawer-depositor. Before determining this issue, we consider the assignment of error based upon the exclusion of evidence.

In Instruction No. 2, supra, the court submitted to the jury an issue of fact as to whether or not "the Bank was without negligence . . . in issuing the cashier's checks here involved." The court further instructed the jury "that negligence, as used in these instructions, means the failure to exercise ordinary care, and that by the term 'ordinary care' is meant that degree of care reasonably to be expected from a person of ordinary prudence under all the facts and circumstances shown in evidence."

Appellant offered to show it was the custom of all the banks in the City of St. Louis, when a person presented to the bank a check payable to the bank and properly signed by the depositor with the request that a cashier's check or exchange be issued therefor, "that where such person had been in the bank on previous occasions on behalf of the same depositor transacting the depositor's business with the bank, and such person gave instructions to the tellers as to the issuance of such cashier's checks, that the First National Bank and the other banks, customarily, and it was the custom of the First National Bank and other banks, to accept the instructions of such person in regard to the issuance of the cashier's check . . . where there were no facts or circumstances present to make the bank suspicious as to the funds being converted." The offer was excluded on the theory that appellant acted "at its peril," and that "custom can't control contact," although appellant's counsel had theretofore stated the purpose of the offering was "to show the question of negligence of the

bank. They claim negligence on the part of the bank." We construe these remarks to mean that the offer was made to show the absence of negligence on the part of the bank.

Appellant contends the evidence was admissible on the theory that it is presumed the parties contracted in reference to the bank's custom; that the custom entered into and formed a part of the contract, since the contract did not expressly negative the custom; and that knowledge of the custom on the part of the bank's customers was conclusively presumed. Respondents, on the other hand contend that the evidence offered was properly rejected because such a custom, if any, must yield to the contract between the depositor and the bank to pay the checks according to their terms. Of course, a bank, when a payee in a depositor's check, may apply the proceeds only for purposes designated by the depositor. American Sash & Door Co. v. Commerce Trust Co., 332 Mo. 98, 56 S. W. (2d) 1034, 1038; Federal Savings & Loan Ins. Corp. v. First Nat. Bank (Circuit Court of Apps., 8th Circuit), [318] 164 F. (2d) 929, 934 (8). The evidence of the custom, as offered, was not admissible to destroy, modify or contradict the contract between the depositor and the bank. Harbaugh v. Ford Roofing Products Co. (Mo. Sup.), 281 S. W. 686, 690; Jordan v. Daniels, 224 Mo. App. 749, 27 S. W. (2d) 1052, 1056. Nor was the evidence admissible to show the custom as a part of the contract and to so relieve the bank of any payment of the depositor's funds without authority. Maher v. Donk Bros. Coal & Coke Co., 323 Mo. 799, 20 S. W. (2d) 888, 895; Staroske v. Pulitzer Pub. Co., 235 Mo. 67, 75, 138 S. W. 36; National Bank of Commerce v. American Exchange Bank, 151 Mo. 320, 331, 52 S. W. 265; Jones v. West Side Buick Auto Co., 231 Mo. App. 187, 93 S. W. (2d) 1083; Landa v. Traders' Bank of Kansas City, 118 Mo. App. 356, 367, 94 S. W. 770. The action is not between banks and there was no showing that respondents knew or were bound to know of the custom. See, 9 C. J. S. 495, Banks & Banking, Sec. 240; 7 Am. Jur. 26, Banks, Sec. 5.

The evidence offered was competent and admissible on the issue upon which it was offered, towit, to show the absence of negligence on the part of the appellant bank. Federal Savings & Loan Ins. Corp. v. First National Bank, supra, 164 F. (2d) 929, 933 (evidence of custom reviewed as competent evidence to support finding for defendant); Tuttle v. Kline's Inc., 230 Mo. App. 230, 89 S. W. (2d) 676, 679; Asbury v. Fidelity Nat. Bank & Trust Co., 231 Mo. App. 437, 100 S. W. (2d) 946, 949 (5); Bjorgo v. First Nat. Bank of Emmons, 132 Minn. 273, 156 N. W. 277; Adams Co. v. Meadows Valley Bank, 47 Idaho 646, 277 Pac. 575. "No one is held by the law to a higher degree of care than the average in the trade or business in which he is engaged. . . . A man, in conducting his business in the way that everybody else in a like business does, has measured up to the standard demanded by the law and has exercised the ordinary

care of prudent men engaged in the business." McClaren v. G. S. Robins & Co., 349 Mo. 653, 162 S. W. (2d) 856, 858; Smith v. Harbison-Walker Refractories Co., 340 Mo. 389, 100 S. W. (2d) 909; Wommack v. Orr, 352 Mo. 113, 176 S. W. (2d) 477, 481. The Court erred in excluding the evidence offered.

With reference to the sufficiency of the evidence to sustain Instruction No. 2, two issues are presented towit, (1) whether the evidence was sufficient to show that Torrence had apparent authority to direct the application of the proceeds of the checks to the purchase of the cashier's checks, and (2) whether or not appellant was "at fault or guilty of negligence," as a matter of law. Respondents insist that "a bank is liable to the drawer of a check payable to the order of the bank where, as here, it diverts the proceeds of the bank to a use other than that of the drawer-depositor without *authority* emanating from the drawer-depositor himself to so divert." Such is the general rule where no valid affirmative defense is presented, or, if presented, is not sustained by the evidence, or where the defense of "apparent authority" (without actual authority) is relied upon and the proceeds of a check payable to the bank is, with full knowledge of the bank, paid or credited to the personal use of the person presenting the check. There is no "apparent authority" to apply the proceeds of such a check to uses known not be the uses of the drawer-depositor.

In this case there was evidence that Torrence had transacted substantially all of respondents' business with appellant over a period of years and on a prior occasion he had properly purchased a cashier's check with a check of respondents' payable to the bank. There was no evidence that appellant had notice or knew the proceeds of the checks were being appropriated to the personal use or benefit of the person requesting the cashier's checks, or that appellant had notice that such person was acting outside of the apparent scope of his authority. Nor does the evidence show, as a matter of law, that appellant was at fault or negligent in acting upon the apparent authority of Torrence and issuing the cashier's checks as directed. See, Griffin v. National Bank of Commerce (Mo. Sup.), 246 S. W. 180, 183; Mayo Bros. Chemical Corp. v. Capital Nat. Bank, 192 Miss. 293, 5 So. (2d) 220; Annotation 138 A.L.R. 853, 854. On the record presented, we think Instruction No. 2 was fully sustained [319] by the evidence. Johnson v. Hurley, 115 Mo. 513, 520, 22 S. W. (2d) 492; Kuraner v. Columbia Nat. Bank, 230 Mo. App. 358, 90 S. W. (2d) 465; Haubelt Bros. v. Rea & Page Mill Co., 77 Mo. App. 672, 679; Federal Savings & Loan Ins. Corp. v. First Nat. Bank, supra; 2 C. J. S. 1208, Sec. 96; 2 Am. Jur. 82, Agency, Sec. 101 et seq. The giving of Instruction No. 1 was reversible error.

■ Error is further assigned on the giving of Instructions IV and VII and the refusal of appellant's instructions "C", "D", "G", "H", "I", "L" and "O", but we find no error in these rulings.

Instructions "C", "I" and "O" would have submitted an issue of law to the jury as to whether Torrence "was acting within the apparent scope of his authority," without requiring any finding of facts on such issue.

The refusal of Instructions "H" and "I" and the giving of IV and VII is presented under one heading. It is contended that, "when Martin as chairman and Humphrey as secretary of the Committee signed a number of checks in blank and left them easily accessible to others who might be tempted to fill them in wrongfully, they were guilty of such negligence as to have prevented a recovery by respondents unless the bank was itself guilty of negligence." The refused instructions required no finding that the negligence submitted caused or induced the issuance of the cashier's checks and their delivery to Torrence. Unless the negligence submitted was a direct and proximate cause of or induced the payments by the bank it constituted no defense. American Sash & Door Co. v. Commerce Trust Co., supra; Scott v. First Nat. Bank, 343 Mo. 77, 119 S. W. (2d) 929, 940; East St. Louis Cotton Oil Co. v. Bank of Steele, 200 Mo. App. 180, 205 S. W. 96, 99; S. S. Allen Grocer Co. v. Bank of Buchanan Co., 192 Mo. App. 476, 182 S. W. 777; Snodgrass v. Sweetser (Ind.), 44 N. E. 648, 650. One signing checks in blank and leaving them accessible to others might reasonably have foreseen that the checks might be filled in and payment to the payee named therein be induced, but how such negligence might be foreseen to cause or induce the bank to pay the proceeds of the checks to a person other than the payee named therein, is difficult to understand. Mere possession of such a check payable to the bank would not authorized such payment. We think such negligence was the remote and not the direct, immediate and proximate cause of the issuance of the cashier's checks. A defense based on such negligence was properly withdrawn by Instructions IV and VII.

■ Instruction "G" would have submitted respondents' alleged negligence in making no objections to the bank's monthly statements, respondents' alleged negligence in the selection of a person to examine and check the statements, a finding that appellant was free from negligence and would have directed a verdict for appellant, if respondents failed to check the statements, without any requirement that the negligence submitted caused or induced the issuance of the cashier's checks. Appellant pleaded "an account stated" and argues under this point that the judgment should be "reversed outright," and that "the court erred in not finding an account stated," but the only error pointed out is the refusal of Instruction "G", which did not submit that issue. Nor were verdicts requested on such issue.

Instruction "D" would have submitted respondents' alleged negligence in failing to inspect or examine the statements and cancelled checks, which would have disclosed embezzlements and misappropriations by Torrence prior to February 1, 1941. It directed a finding for appellant, if appellant was not negligent and if respondents had notified appellant of such prior embezzlements, appellant would not have made the payments to Torrence. The issue of cause or inducement was not submitted. In issuing the cashier's checks to Torrence upon his apparent authority to direct their issuance, the bank was not relying on prior forgeries directing payment to Torrence, nor upon prior negligence of respondents. The bank itself was payee in the checks in question. Respondents' negligent failure to examine the statements which would have disclosed payments to Torrence, as payee, was not in law an inducement or [320] cause of the issuance of cashier's checks to Torrence, on his apparent authority, without even a forged order. The negligence sought to be submitted was remote.

Instruction "L" was based on the rule that when one or two innocent persons must suffer, the loss should fall on the one whose negligence occasioned the loss. The negligence sought to be submitted against respondents was negligence in signing checks in blank and leaving them accessible to Torrence. We have held this negligence only a remote cause under the circumstances of this case.

For the errors heretofore mentioned, the judgment is reversed and the cause remanded. *Bradley* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by DALTON, C., is adopted as the opinion of the court. All the judges concur.